**In re John Lawrence FREIBERG Applying for adoption of Wilmer James Thomas, III, and Randolph Louis Thomas.**

**Civ. A. No. 16495.**

United States District Court
E. D. Louisiana,
New Orleans Division.
Jan. 23, 1967.

Hugh M. Wilkinson, Jr., Wilkinson & Wilkinson, New Orleans, La., for applicant.

Edward B. Benjamin, Jr., John Minor Wisdom, Jr., Stone, Pigman & Benjamin, New Orleans, La., for petitioner for removal.

HEEBE, District Judge:

Applicant Freiberg originally brought this action in the Juvenile Court for the Parish of Orleans seeking the adoption, under Louisiana Revised Statutes 9:422.-1,[1] of his wife's two minor children born

I. § 422.1 Adoptions by step-parent, grand-parent; consent

"If the spouse of the petitioner is the legitimate parent of the child * * * then the consent of the other legitimate parent is not necessary if the first and

second or the first and third conditions exist:

"(1) The spouse of the petitioner * * * [has] been granted custody of the child by a court of competent jurisdiction and

of her prior marriage to Wilmer J. Thomas, Jr., presently a resident of New York. Mr. Thomas, the real defendant in the adoption proceeding, removed the action to this Court alleging diversity of citizenship and, alternatively, a threatened violation of his right as a non-resident to equal protection of the law sufficient to allow removal under 28 U.S.C.A. § 1443 (1).

## PART I.

In alleging that diversity of citizenship exists between the parties to this action, Mr. Thomas attempts to meet the requirements of § 1441 of the Judicial Code, Title 28 U.S.C.A. Under that section, state court civil actions "of which the district courts of the United States have original jurisdiction" may be removed to federal district court.

 As a matter of constitutional and statutory law the district courts of the United States, if diversity of citizenship and jurisdictional amount are present, have jurisdiction of the subject matter over what may be called "domestic relations" cases. But by a judicially-created exception federal courts will not act in the domestic relations area, though the *power* to act is present. Ex parte Burrus, 136 U.S. 586, 593–594, 10 S.Ct. 850, 34 L.Ed. 500 (1890); Wright on Federal Courts, § 25, p. 73; 1 Barron & Holtzoff Federal Practice and Procedure (Wright Ed.), § 40.1. Federal courts will accept jurisdiction to a very limited extent in the domestic relations area, as where the action seeks to enforce an alimony decree, but they have consistently refused to hear any action seeking a determination of marital and parental status. The federal courts will not accept original diversity jurisdiction of a case such as this one, involving an adoption or, in effect, a determination of the relationship between parent and child. It is clear that the Court would have declined to exercise original jurisdiction in this matter had the suit originally been filed here. The policy considerations present on removal appear to be no different than those prompting refusal to take original jurisdiction; as removal under § 1331 is keyed to original jurisdiction, the Court must decline to accept removal under that statute.

## PART II.

Alternatively Mr. Thomas seeks to remove under the civil rights removal statute, 28 U.S.C.A. § 1443(1). He points out that the cited Louisiana Adoption Statute, see footnote 1, supra, allows adoption in two different situations, i. e., either (1) where the first and second conditions exist or (2) where the first and third conditions exist. The second condition covers a parent who has "refused or failed to comply with a court order of support for a period of one year," while the third condition covers a parent who is "a non-resident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father. * * *" Much argument resulted herein from Mr. Thomas' being a non-resident while also being under a court order of support entered in the divorce proceeding between himself and the present Mrs. Freiberg. Questions were raised as to whether the two conditions were intended to be mutually exclusive, in that the second condition would apply to all those subject to the personal jurisdiction of the Court and the third condition to those not so subject; whether the third condition can be interpreted to impose a more onerous burden than the second condition; whether, if it does so, the application of the third condition to Mr. Thomas as a non-resident would deprive him of the protection of the laws granted to residents under a court order of support. In short, depending on the

"(2) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year or

"(3) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father * * *."

theory advanced by counsel for Mr. Freiberg at the adoption proceeding, problems concerning equal protection might be raised. Counsel for Mr. Thomas of course favor an interpretation which would not be subject to constitutional infirmities, but fear that even though this Court might accept this interpretation, if the matter were remanded, the state court judge, whom they in no way claim is biased or prejudiced or prepared to deprive them of a fair trial, might, under the urgings of counsel for Mr. Freiberg, reject that interpretation, fall into error of constitutional dimensions, and thus prove that remand should have been denied in that they will not be able to enforce in the state court their right to equal protection. Counsel for Mr. Freiberg attempted to show that no constitutional problem was involved and argued that he did not intend to proceed under the third condition, but refused to stipulate to that or to an interpretation of the statute which would eliminate the constitutional difficulty.

▆▆▆ The Court finds it unnecessary to render a preliminary advisory opinion on the meaning and interpretation to be given the adoption statute. The Court believes it was never intended and the jurisprudence at no time permitted civil rights removal based on the mere possibility that a state court judge would commit error where there is no showing of prejudice or a predisposition to deprive the defendant of a fair trial inherent in the state judicial process, and on that basis this suit must be remanded. All argument on this matter has been put to rest by the decision of the Supreme Court in City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). There, Mr. Justice Stewart stated, 384 U.S. at 827–828, 86 S.Ct. at 1812, that:

"It is *not* enough to support removal under Section 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court. The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendants will be 'denied or cannot enforce in the courts' of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial."

If it is not enough to support removal to show that the defendant is unable to obtain a fair trial before a particular judge, then the mere possibility that a fairminded judge may err, which is, essentially, all that is urged here, cannot begin to support removal.

Even the dissenting opinion in *Peacock* does not help Mr. Thomas. Under that opinion, which distinguishes between one who "is denied" rights in the state court and one who "cannot enforce" those rights in the state court, in order to determine whether a person "cannot enforce" his federal rights, there must be a prediction of the future performance of the state courts, 384 U.S. at 848, 86 S.Ct. 1800. The present suit would have to qualify, if at all, under the "cannot enforce" phrase. But even the dissenters say, 384 U.S. at 851, 86 S.Ct. at 1825, that such a removal would be the unusual case:

"The courts of the States generally try conscientiously to apply the law of the land. To be sure, state court judges have on occasion taken a different view of the law than that which this Court ultimately announced. But these honest differences of opinion are not the sort of recalcitrance which the 'cannot enforce' clause contemplates. What Congress feared was the exceptional situation. It realized that considerable damage could be done by even a single court which harbored

such hostility toward federally protected civil rights as to render it unable to meet its responsibilities. The 'cannot enforce' clause is directed to that rare case."

In the present case there is not involved any hostility to federally protected rights or any recalcitrance in enforcing them, but merely a possibility that a conscientious judge might make an error. Thus, either under the view of the majority or the view of the dissenters in *Peacock*, the grounds alleged for the removal of this case are not comprehended within the meaning of § 1443.

The motion to remand is hereby granted.