SAM D. JOHNSON, Circuit Judge:
 

 This is an action to enforce the terms of a 1963 divorce decree that awarded to plaintiff one-half of defendant’s accumulated right under a United States Army retirement benefits program. Following a non-jury trial, the district court awarded plaintiff accrued and unpaid benefits in the amount of $34,641.90 plus interest from the date of judgment, and ordered defendant to maintain with the United States Army an allotment order providing for the payment directly to plaintiff of her one-half share of all future payments to which she is entitled. The district court also permanently enjoined defendant from proceeding with his civil contempt action against plaintiff in the United States District Court for the Eastern District of Missouri, Southeastern Division, the court from which defendant obtained a discharge in bankruptcy in 1973. The judgment of the district court is affirmed.
 

 I.
 

 Plaintiff and defendant were divorced in 1963. The divorce decree, which was rendered in the state district court in El Paso, Texas, provided in part that defendant’s accumulated right to United States Army retirement benefits was community property, and, as such, was the joint property of plaintiff and defendant upon divorce. The decree ordered defendant to execute all documents necessary to accomplish the payment directly to plaintiff of her one-half share of each payment made after defendant’s retirement from the Army, and provided that defendant was personally responsible to plaintiff for such payments in the event that they could not be made directly to her by the Army.
 

 Shortly after the divorce, defendant retired from the Army. He paid to plaintiff one-half of his military retirement benefits from the date of his retirement through March 1967; he has paid nothing to plaintiff since that time. In 1971, plaintiff obtained a judgment against defendant for accrued benefits due her in the amount of $8,606.28. The judgment was entered by the state district court in Denton County, Texas. This judgment was affirmed by the Texas Court of Civil Appeals in
 
 Badgett v. Erspan,
 
 476 S.W.2d 381 (Tex.Civ.App.— Fort Worth 1972, no writ), but defendant has not paid it. No execution has ever been requested or issued on the Denton County judgment.
 

 In 1972, defendant filed a petition in bankruptcy in the United States District Court for the Eastern District of Missouri, Southeastern Division. He listed among his debts plaintiff’s 1971 Denton County judgment as well as the El Paso divorce decree. Plaintiff received notice of the petition in bankruptcy, but filed no claim in the bankruptcy proceedings, and did not object to the discharge in bankruptcy that defendant obtained thereby.
 

 Jurisdiction in the case
 
 sub judice
 
 is predicated upon diversity of citizenship, 28 U.S.C. § 1332. Plaintiff seeks from defendant her share of the retirement benefits paid by the government to defendant, but not forwarded to her, since June 10, 1967, the date of the Denton County judgment. Plaintiff also seeks an order that will ensure her ability to receive future retirement benefits to which she is entitled. In response, defendant argues that his 1973 discharge in bankruptcy absolved him of any liability to plaintiff for either past or future retirement benefits.
 

 Following submission of the instant case to the federal district court, defendant instituted contempt proceedings against plaintiff in the Missouri bankruptcy court from which he obtained his discharge, alleging that, by bringing the present action, plaintiff had violated an injunction that arose by operation of law from defendant’s discharge in bankruptcy. The federal district court in the present case temporarily
 
 *553
 
 enjoined defendant from prosecuting the Missouri contempt proceeding, and subsequently held that defendant’s discharge in bankruptcy did not affect his liability to plaintiff for either past or future retirement benefits. Consequently the court ordered defendant to pay to plaintiff $34,-641.90 plus interest, which represents one-half of the benefits accrued from June 10, 1971, to the date of the federal district court’s judgment herein. The court also ordered defendant to execute and keep in full force and effect with the United States Army an allotment order directing the Army to pay directly to plaintiff one-half of all future retirement benefits. Finally, the district court entered a permanent injunction preventing defendant from proceeding with his contempt action in the Missouri bankruptcy court.
 

 On appeal, defendant argues (1) that the federal district court erred in holding that his 1973 discharge in bankruptcy did not extinguish plaintiff’s claim to one-half of defendant’s military retirement benefits, (2) that even if the obligation to plaintiff was exempt from discharge under former section 17(a)(7) of the Bankruptcy Act, that provision is unconstitutional on equal protection grounds, and (3) that the district court erred in enjoining defendant from proceeding in the bankruptcy court because that court has jurisdiction to determine dis-chargeability. Although defendant challenges on appeal the district court’s determination that his discharge did not extinguish plaintiff’s right to her share of the retirement benefits, he elected not to appeal the district court’s award of $34,641.90 representing her share of benefits that defendant already has received.
 
 [1]
 

 
 *554
 
 II.
 

 Section 17(a)(7) of the Bankruptcy Act of 1938,
 
 [2]
 
 former 11 U.S.C. § 35(a)(7), provided in part:
 

 A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... are for alimony due or to become due, or for maintenance or support of wife or child ....
 

 In
 
 In re Nunnally,
 
 506 F.2d 1024 (5th Cir. 1975), this Court explored the relationship between Texas community property law, military retirement benefits, and section 17(a)(7). In that case, the former wife was awarded in the divorce proceeding,
 
 inter alia,
 
 a lien upon her ex-husband’s Navy retirement benefits to secure payment of $46,779.41 which represented an advance to the community from her separate estate. Shortly thereafter, the ex-husband filed a petition in bankruptcy, and both the bankruptcy referee and the district court determined that the former wife’s right to the retirement benefits was a dischargeable debt. On appeal, the issue presented to this Court was whether the former wife’s right to the $46,779.41 awarded by the divorce court, and secured by the lien on the retirement benefits, was a dischargeable debt, or whether it was exempt from discharge under section 17(a)(7). This Court, although recognizing that alimony after divorce is not permitted in Texas,
 
 Francis v. Francis,
 
 412 S.W.2d 29, 32 (Tex.1967), also noted that under the scheme of the Texas Family Code, a divorce court is authorized to divide the separate and community property between the parties in a just and equitable manner, and that
 

 [f]actors which the Texas courts may take into account in making the division and award “include the disparity of the
 
 earning power
 
 of the parties as well as their business opportunities .... the physical conditions of the parties, probable
 
 future need for support,
 
 and educational background; ... [t]he fault in breaking up the marriage and the benefits [the] innocent spouse would have received from a
 
 continuation
 
 of the marriage ....
 

 506 F.2d at 1026, (emphasis in original),
 
 quoting Cooper v. Cooper,
 
 513 S.W.2d 229, 233-34 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). The Court also observed that, under Texas law, the future support of a former spouse “can play a significant role in the divorce court’s property division and that what may appear to be a mere division of assets may in fact, under a Texas decree, contain a substantial element of alimony-substitute, support or maintenance, however, termed,” 506 F.2d at 624. Finally, this Court noted that the Texas Supreme Court has recognized that support payments, although considered alimony in other states, are not so characterized in Texas.
 
 See Francis v. Francis,
 
 412 S.W.2d at 32-33. Consequently, this Court determined that, for purposes of interpreting the federal bankruptcy laws, a federal court is not bound by the label that a state attaches to an award, but rather must look to its substance, and held that the award fell within the exception from discharge contained in section 17(a)(7). 506 F.2d at 1027.
 

 Relying upon
 
 Nunnally,
 
 the district court in the case
 
 sub judice
 
 held that plaintiff’s right to her share of defendant’s retirement benefits was a nondischargeable obligation for “alimony due or to become due, or for maintenance or support” under section 17(a)(7).
 
 In Matter of Crist,
 
 632 F.2d 1226 (5th Cir. 1980), which also involved the question of nondischargeability under section 17(a)(7), this Court stated:
 

 Under the relevant standard of review, findings of fact are not to be disturbed unless clearly erroneous. “The test ... is not whether a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge’s findings.”
 

 quoting Matter of Bardwell,
 
 610 F.2d 228, 230 (5th Cir. 1980).
 

 
 *555
 
 Defendant argues that, although correct at the time it was decided,
 
 Nunnally
 
 has been undermined by subsequent decisions holding that, for purposes of the federal government’s consent to suit, a division of military retirement benefits in a Texas decree is not “alimony” within the meaning of the Social Security Act, 42 U.S.C. §§ 659, 662(c).
 
 See United States v. Stelter,
 
 567 S.W.2d 797 (Tex.1978);
 
 see also Marin v. Hatfield,
 
 546 F.2d 1230 (5th Cir. 1977). Defendant’s reliance upon the principle espoused in
 
 Stelter
 
 and
 
 Marin
 
 is misplaced. First, it is significant that neither decision involves the Bankruptcy Act; moreover, in neither decision did the Court mention, much less disapprove, this Court’s decision in
 
 Nunnally.
 

 Of more substance is the fact that the rule expressed in
 
 Stelter
 
 and
 
 Marin
 
 is inapposite to the question presented in
 
 Nunnally
 
 and in the case
 
 sub judice.
 
 In
 
 Stelter
 
 and
 
 Marin
 
 the courts held that, for purposes of determining the extent of the federal government’s consent to suit, military retirement benefits awarded under a Texas decree are not “alimony” under Texas law. In
 
 Nunnally,
 
 however, this Court addressed the separate and distinct question of whether, for purposes of applying the federal bankruptcy laws, such benefits, although not “alimony” under state law, nonetheless may contain a substantial element of “alimony-substitute, support or maintenance, however termed.” 506 F.2d at 1024.
 
 [3]
 
 The Court’s affirmative answer in
 
 Nunnally
 
 is supported both by reason and precedent. In
 
 Matter of Crist,
 
 632 F.2d at 1232, this Court reiterated the well-established policy of “liberal construction of the Bankruptcy Act in light of the purpose of the provision under consideration.” Also in
 
 Crist,
 
 this Court stated the purpose underlying section 17(a)(7) as follows:
 

 “The bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes and will not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce.”
 

 632 F.2d at 1233;
 
 quoting Wetmore v. Markoe,
 
 196 U.S. 68, 25 S.Ct. 172, 175, 176, 49 L.Ed. 390 (1904). The essence of this Court’s decision in
 
 Nunnally
 
 is that, regardless of how a state may choose to define “alimony,” a federal court, for purposes of applying the federal bankruptcy laws, is not bound to the label that a state affixes to an award, and that, consistent with the objectives of federal bankruptcy policy, the substance of the award must govern. 506 F.2d at 1027. In the present case, as in
 
 Nunn ally,
 
 the award contains an element of “alimony substitute, support or maintenance, however termed.” 506 F.2d at 1024. Consequently, the district court’s finding that plaintiff’s right to her share of defendant’s retirement benefits was nondischargeable under section 17(a)(7) is not clearly erroneous, and must be affirmed.
 

 III.
 

 By way of alternative argument, defendant asserts that even if the section 17(a)(7) exemption from discharge applies to the award in this case, that statute nonetheless is unconstitutional, and an exemption from discharge should not be recognized. Defendant argues that section 17(a)(7) creates a gender-based classification in violation of the equal protection component of the fifth amendment because it exempts from discharge only those obligations “for alimony due or to become due, or for maintenance or support of
 
 wife
 
 or child .... ” (emphasis added). This argument was raised in
 
 Matter of Crist,
 
 632 F.2d 1226 (5th Cir. 1980). In
 
 Crist
 
 this Court acknowledged that the sex-based classification contained in section 17(a)(7) was constitutionally infirm, but held that the appropriate remedy was not to strike down the entire statute, but rather to ex
 
 *556
 
 tend the benefits of section 17(a)(7) to the excluded class,
 
 i. e.,
 
 to allow both former husbands and wives receiving alimony or maintenance or support to assert the non-dischargeability of the ex-spouse’s obligation under section 17(a)(7). Consequently, defendant’s argument to the contrary must be rejected.
 

 IV.
 

 Finally, defendant argues that because a bankruptcy court has jurisdiction to determine the dischargeability of a debt, the district court in the case
 
 sub judice
 
 erred in permanently enjoining defendant from proceeding against plaintiff for civil contempt in the Missouri bankruptcy court. This argument cannot be sustained. Although subsection 17(a)(2) of the former Bankruptcy Act enumerated certain categories of debts for which dischargeability could be determined only in the bankruptcy court, and section 14(f)(2) provided for an injunction against proceedings in other courts to enforce those obligations, the 1970 amendments to the Act moved claims for alimony, maintenance and support ■ from subsection 17(a)(2) to 17(a)(7), and thereby provided that, with regard to those claims, the bankruptcy court possessed only concurrent jurisdiction with other courts and no injunction prevented the subsequent assertion of those claims.
 
 See
 
 1A Collier on Bankruptcy ¶¶ 14.69, 17.01, 17.18, 17.22A (14th ed.).
 
 [4]
 
 Inasmuch as defendant’s discharge did not operate to enjoin plaintiff from litigating the issue of nondischarge-ability under section 17(a)(7) in the present action, defendant’s civil contempt proceeding in the bankruptcy court constituted nothing more than an attempt to relitigate the district court’s determination of nondis-chargeability in that forum. Consequently, once the district court in the case
 
 sub judice
 
 determined that defendant’s obligation to plaintiff was not dischargeable, the court properly acted to prevent the relitigation of that issue in the bankruptcy court.
 
 [5]
 
 28 U.S.C. § 1652;
 
 see Villarreal v. Brown Express, Inc.,
 
 529 F.2d 1219, 1222 (5th Cir. 1976). Consequently, the district court did not err in enjoining defendant from proceeding against plaintiff in the bankruptcy court.
 

 AFFIRMED.
 

 [1]
 

 . Defendant raises two additional arguments. First, he asserts that under the “domestic relations” theory of federal abstention, the district court should have refused to assert jurisdiction in this case. In
 
 Crouch v. Crouch,
 
 566 F.2d 486 (5th Cir. 1978), this Court stated the rule that:
 

 Federal courts have traditionally refused to exercise diversity jurisdiction in a variety of domestic relations cases, including suits for divorce and alimony, ... and actions to enforce separation or divorce decrees still subject to state court modification. The reasons for federal abstention in these cases are apparent: the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts.
 

 566 F.2d at 487 (citations omitted). The Court, however, recognized that it is neither necessary nor appropriate for federal courts to abstain in every case involving domestic relations questions:
 

 While we approvingly acknowledge the so-called domestic relations exception to diversity jurisdiction, we find it inapplicable to the instant case, which involves little more than a private contract to pay money between parties long since divorced .... We are faced here with no questions of custody or parental rights, no pending state court action or agreement to litigate in state court, and no threat that the former spouses will seek to play one court system off against the other. Nor do we perceive any strong state interest in the adjudication of this suit or any special competence on the part of state courts, other than their superior ability to interpret state law, which is always present in diversity suits. Because none of the rationales for the domestic relations exception obtained in this case — with the possible exception of congested federal dockets — we uphold the district court’s exercise of jurisdiction and proceed to determine the merits.
 

 Id.
 
 at 487-88 (citations omitted; footnote omitted). As in
 
 Crouch,
 
 the case
 
 sub judice
 
 involves none of the concerns upon which the domestic relations exception rests. Indeed, as developed
 
 infra,
 
 this case essentially involves questions of interpretation of the federal bankruptcy laws and of the proper relationship between a bankruptcy court and other federal courts. 'Consequently, the district court did not err in asserting jurisdiction in this case.
 

 Defendant also argues that he cannot comply with the district court’s order that he maintain with the United States Army an allotment in favor of his wife for one-half of all future retirement benefits because the Army does not allow allotments in these circumstances. Defendant persists in this argument despite the fact that the Office of the Judge Advocate General, Department of the Army, by letter of May 23, 1980, informed counsel for both parties that the Department of Defense Military Pay and Allowances Entitlements Manual was amended on December 19, 1977, to permit retired military members to authorize allotments to former spouses. It does not appear from the record that defendant has ever attempted to secure such an allotment. Absent a showing that defendant attempted to secure such an allotment, and that such an application was rejected by the Army, defendant’s attack on the district court’s order cannot be sustained.
 

 [2]
 

 . Defendant’s bankruptcy proceedings were conducted prior to the effective date of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101
 
 et seq.
 

 [3]
 

 . This reasoning also distinguishes
 
 Harbour v. Harbour,
 
 590 S.W.2d 828 (Tex.Civ.App.—Houston [14th Dist.] 1979). In any event, contrary to defendant’s assertion, the court in
 
 Harbour
 
 did not reject
 
 Nunnally,
 
 but rather held that plaintiff in that case failed to prove ‘that the lump sum award of $25,000 was in the nature of alimony, support or maintenance.
 

 [4]
 

 . Although defendant could have moved the bankruptcy court, pursuant to Rule 409(a)(1) of the Rules of Bankruptcy Procedure, for a determination of the dischargeability of plaintiffs claim to her share of the retirement benefits, and thereby obtained the injunctive relief authorized by section 17(c)(4) and Rule 401(e) of the Rules of Bankruptcy Procedure, he chose not to do so.
 
 See
 
 12 Collier on Bankruptcy ¶ 401.7 (14th ed.).
 

 [5]
 

 . Defendant’s motion in the Missouri bankruptcy court alleged that plaintiffs claim in the present case was for property wrongfully converted, a claim under section 17(a)(2) and therefore subject to the section 14(f)(2) injunction. Although plaintiffs complaint in the case
 
 sub judice
 
 indeed does contain an alternative claim grounded upon a theory of conversion, plaintiffs principal claim, and the theory upon which this case was tried and decided by the district court, was that of nondischargeability under section 17(a)(7). Having determined that plaintiffs claim indeed is nondischargeable as one for alimony, maintenance, or support under section 17(a)(7), and not one for conversion, the district court’s injunction did not intrude upon the bankruptcy court’s exclusive jurisdiction to determine nondischargeability of claims under section 17(a)(2).