Barbara **SUTHERLAND** and husband, **Vernon Sutherland**

v.

**Hazel SUTHERLAND.**

**No. S–79–7–CA.**

United States District Court, E.D. Texas, Sherman Division.

April 5, 1983.

Charles H. Robertson, Robertson & Wilkinson, Dallas, Tex., for plaintiffs.

W. Laurence Evans, Kennedy, Minshew, Evans, Campbell & Cain, Sherman, Tex., for defendant.

## MEMORANDUM OPINION

JUSTICE, Chief Judge.

The plaintiffs in this civil action, one of whom is Vernon Sutherland ("Vernon"), seek to set aside or enjoin that portion of an August 31, 1971, state court divorce decree that awarded his ex-wife, defendant Hazel Sutherland ("Hazel"), one-half of his United States Naval Fleet Reserve retainer pay. *See* 10 U.S.C. § 6330. Vernon contends that that portion of the divorce decree violates the Supremacy Clause of the federal Constitution, Art. VI, cl. 2, relying principally upon the recent Supreme Court holding in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In *McCarty,* the Court, reviewing on appeal a California divorce decree, held that Congress intended military retirement pay pursuant to 10 U.S.C. §§ 3911 and 3929 to be a "personal entitlement." 453 U.S. at 224, 101 S.Ct. at 2737. It was further held that application of community property principles to military retirement pay would threaten "grave harm" to "clear and substantial federal interests," 453 U.S. at 232, 101 S.Ct. at 2741, and that, accordingly,

such a decree violated the Supremacy Clause.

## I.

### Facts

The facts of this case are not in substantial dispute.

On August 31, 1971, Vernon and Hazel were divorced, pursuant to a judgment entered by the District Court of Fannin County, Sixth Judicial District of Texas. In dividing certain real and personal property between the parties, and in making provisions for the support of the minor children, that court treated Vernon's Naval Fleet Reserve retainer payments, to which he had become entitled on July 15, 1970, 10 U.S.C. § 6330, as community property, and granted Hazel a one-half interest in all past and future payments thereunder. Although Vernon was represented by counsel, he did not perfect an appeal from the judgment.

Vernon paid half of the retainer pay he had received at the time of the entry of judgment; but he did not make any further payments, until the state district court adjudged him to be in contempt, for failure to make such payments, on June 19, 1974.

Vernon—then in confinement pursuant to the contempt order—applied for the writ of habeas corpus to the Court of Civil Appeals for the Seventh Supreme Judicial District of Texas. That court denied the application, on the grounds that an unappealed final judgment, even if erroneous, could not be collaterally attacked in a habeas corpus proceeding. *Ex parte Sutherland,* 515 S.W.2d 137 (Tex.Civ.App.—Texarkana 1974, reh. den.)

Vernon then filed an original application for the writ of habeas corpus in the Supreme Court of Texas. That court held that the unappealed final divorce judgment was not a "void" judgment; hence, whether or not it was "erroneous," the judgment was not susceptible to collateral attack. *Ex parte Sutherland,* 526 S.W.2d 536 (Tex. 1975).

On September 1, 1976, Vernon filed suit in the District Court of Fannin County to vacate, annul, or hold void the retainer payments portion of the August 31, 1971, divorce decree, pursuant to the Texas Uniform Declaratory Judgment Act. Vernon's new wife, Barbara Sutherland ("Barbara"), who had married Vernon on January 20, 1972, intervened as a party plaintiff in Vernon's action. The trial court denied the requested relief based on the doctrines of *res judicata,* collateral estoppel, and laches.

The Court of Civil Appeals affirmed the judgment of the trial court, on the grounds that the unappealed divorce decree was a final judgment, and, therefore, entitled to *res judicata* effect, unless it could be attacked upon a bill of review, pursuant to Rule 329b(5), Tex.R.Civ.P. Furthermore, it held that, even if Vernon's suit were construed to be a bill of review, it failed upon the merits, because Vernon had not alleged that he was prevented from making his then-current contentions in the original divorce proceedings by reason of fraud, accident, or wrongful act of defendant Hazel. Finally, it was held that Vernon's suit, even if deemed a bill of review, would be barred by the four-year statute of limitations. Tex.Rev.Civ.Stat.Ann. art. 5529. *Sutherland v. Sutherland,* 560 S.W.2d 531 (Tex. Civ.App.—Texarkana 1978, writ ref'd n.r. e.). Barbara was also precluded by the doctrine of *res judicata* from collaterally attacking the divorce judgment, because she was in privity with Vernon. 560 S.W.2d at 533.

Vernon and Hazel applied for writ of error to the Texas Supreme Court, but the application was refused.

Plaintiffs Vernon and Barbara filed the instant civil action on January 15, 1979, again seeking to set aside that portion of the 1971 divorce decree that awarded Hazel half of Vernon's Fleet Reserve retainer payments.

## II.

### The Legal Issue

Although neither the Supreme Court of Texas nor the United States Supreme Court has determined whether or not Naval Fleet

Retainer payments may be considered community property, it is arguable that the 1971 divorce decree would now, if it could be subjected to appellate review, be reversed as a matter of both state and federal law. *Sprott v. Sprott,* 576 S.W.2d 653 (Tex. Civ.App.—Beaumont 1978, writ dismissed) (Naval Fleet Reserve Retainer payments not community property as matter of state law); *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (Railroad Retirement Act benefits not divisible as community property as matter of federal law); *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (military retirement benefits not divisible as community property as matter of federal law). Nevertheless, before this court can proceed to any such holding, it must address the narrow threshold question of whether it is empowered to entertain a challenge to an unappealed 1971 Texas divorce judgment, a judgment the Texas courts are honoring, and, further, a judgment the Texas Supreme Court has determined to be final, not void, and not susceptible to collateral attack. The decisions of the Court of Appeals for the Fifth Circuit leave little latitude for discretion in answering this question.

In *Erspan v. Badgett,* 659 F.2d 26 (5th Cir.1981) (*"Erspan II"*), the Court of Appeals gave consideration to a diversity suit brought by an ex-wife to enforce a 1963 final, unappealed Texas divorce judgment, which had treated military retirement benefits as community property. The defendant husband challenged the validity of the Texas judgment under the Supremacy Clause. There, although cognizant of the *McCarty* decision—the definitive determination of the meritoriousness of the husband's federal challenge—the court refused to set aside the state judgment.

[Retiree] advances no reason why that judgment should be denied its usual *res judicata* effect, and none is readily apparent: as a final judgment it settles not only the issues actually litigated, but also any issues that *could* have been litigated in that proceeding. *Federated Department Stores, Inc. v. Moitie,* [452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103] (1981).

*Erspan* II, 659 F.2d at 28. The Court of Appeals relied in part upon the Supreme Court's articulation, in *Moitie,* of the general rule that "the *res judicata* consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Moitie,* 452 U.S. at 398, 101 S.Ct. at 2427; *Erspan* II, 659 F.2d at 28.

The Court of Appeals buttressed its position on the rationale that partial invalidation of an equitable divorce judgment, conceived and issued as a whole, would constitute an injustice to one ex-spouse, and a windfall to the other. 659 F.2d at 28–29, n. 2. In so concluding, the court was mindful that

under the scheme of the Texas Family Code, a divorce court is authorized to divide the separate and community property in a just and equitable manner, and that

[f]actors which the Texas courts may take into account "include the disparity of the *earning power* of the parties as well as their business opportunities .... the physical conditions of the parties, probable *future need* for support, and educational background; ... [t]he fault in breaking up the marriage and the benefits [t]he innocent spouse would have received from a continuation of the marriage....

[*In re Nunnally*] 506 F.2d [1024] at 1026, ... *quoting Cooper v. Cooper,* 513 S.W.2d 229, 233–34 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ).

*Erspan v. Badgett,* 647 F.2d 550, 554 (5th Cir.1981) (*"Erspan I"*). *See also, Erspan* II, 659 F.2d at 28, n. 2. Thus, despite the fact that Texas law formally forbids "alimony," *Francis v. Francis,* 412 S.W.2d 29, 32 (Tex. 1967), *Erspan* I, 647 F.2d at 554, the Fifth Circuit concluded that Texas divorce decrees "in fact ... contain a substantial element of alimony-substitute, support or maintenance, however termed." *Erspan* I, 647 F.2d at 554, quoting *In re Nunnally,* 506 F.2d at 1024. The court, therefore, rea-

soned that a state judge, in equitably fashioning a divorce judgment after *McCarty,* could achieve a substantially similar total distribution of property as he could have achieved prior to *McCarty,* albeit through a different apportionment of specific available assets. From that perspective, the court felt that it would be more inequitable to allow partial invalidation of a total divorce decree than to permit that totality to remain in effect, despite its concededly improper distribution of a single non-community asset.

In *Wilson v. Wilson,* 667 F.2d 497 (5th Cir.1982), the Court of Appeals considered another ex-wife's diversity suit brought to enforce an unappealed 1970 Texas divorce decree, which had awarded her a portion of her husband's military retirement pay. Again, the husband defended on the basis of *McCarty.* Adhering to *Erspan* II, the court held that the divorce decree was shielded from *McCarty* by principles of *res judicata,* and by 28 U.S.C. § 1738, which requires that state judgments be given "the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such state ... from which they are taken." *Wilson,* 667 F.2d at 498. The final divorce judgment was held to preclude the parties "from relitigating issues that were or could have been raised in that action." 667 F.2d at 498. Again, equitable considerations, as well as the general public policy embodied by *res judicata,* were· marshaled in support of the outcome:

> Although henceforth Texas divorce courts, aware that they can not divide military retirement benefits as community property, can fashion an equitable distribution of other community property so as to strike a rough balance, denial of *res judicata* effect where the property division is final would result in a windfall for the retired spouse.

*Wilson,* 667 F.2d at 499.

The *Wilson* court left open the possibility that portions of final Texas divorce judgments could be set aside to correct *McCarty* errors if Texas courts were themselves to adopt such a policy, as a matter of the Texas law of final judgments and *res judicata.* 667 F.2d at 498 n. 2. The "full faith and credit" statute would not, of course, bind a federal court to accord any greater preclusive effect to a state judgment than the courts of that state would themselves accord it. *Id. See generally* 1B Moore's Federal Practice ¶ 0.406[1] (1982). However, the Texas Supreme Court has already intimated its appróval of the *Erspan* II approach—the view that final judgments are not susceptible to collateral attack despite *McCarty. Trahan v. Trahan,* 626 S.W.2d 485, 487–488 (Tex.1981). Numerous Texas Courts of Appeals have already explicitly so held. *Ex parte Hovermale,* 636 S.W.2d 828 (Tex.App.—San Antonio 1982) (*en banc*); *Ex parte Welch,* 633 S.W.2d 691 (Tex.App.—Eastland 1982); *Ex parte Gaudion,* 628 S.W.2d 500 (Tex.App.—Austin 1982); *Thompson v. Thompson,* No. 82–23703, Slip Op. (Tex.App.—Houston Dec. 6, 1982). *But see Ex parte Acree,* 623 S.W.2d 810 (Tex.App.—El Paso 1981, no writ).

*Wilson* and *Erspan* II, therefore, preclude this court from any further examination of the merits of Vernon's claim regarding the alleged federal preemption of state community property laws by federal statutes providing for United States Naval Fleet Reserve retainer pay.

The only remaining possible distinction between those cases and the one *sub judice* is that Vernon has been joined in this suit by his new wife, Barbara, who is not a party to the 1971 decree, and who, it is argued, is therefore not precluded from attacking that decree on *res judicata* grounds.

There is, to begin with, some question as to whether Barbara has standing to assert an interest in her husband's retainer payments since, by her own theory, those payments are "personal entitlements" in which a wife—Hazel or Barbara—has no community próperty interest whatsoever. *Cf. Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). In any event, assuming Barbara has an interest in Vernon's retainer pay, it is an interest derived from Vernon's interest. Since the Texas

Court of Civil Appeals has already determined that, under Texas law, Barbara is considered a privy to a party in judgment (*i.e.,* Vernon), she is precluded by the principle of *res judicata* from collaterally attacking the 1971 divorce decree. *Sutherland v. Sutherland,* 560 S.W.2d at 533; 34 Tex. Jur.2d § 401, 402, and 409. The Texas Courts having given preclusive effect to the divorce judgment *vis-à-vis* Barbara, this court appears to be bound to do the same, because of the provisions of 28 U.S.C. § 1738. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), *Gresham Park Community Organization v. Howell,* 652 F.2d 1227, 1241 n. 42 (5th Cir.1981). Furthermore, since Barbara was an actual party to *Sutherland v. Sutherland,* the determination in that case that Barbara was a "privy" of Vernon for purposes of *res judicata,* should itself collaterally estop Barbara from relitigating that issue in this court. *See generally* 1B Moore's Federal Practice ¶ 0.405[3] (1981).

For all of the foregoing reasons, plaintiffs' federal claim is not reached, and judgment must be granted in favor of defendant Hazel Sutherland.

It will be so ordered.