In the Matter of Thomas E.
BIGGS, Debtor.

Thomas E. BIGGS, Appellant,

v.

Elizabeth BIGGS, Appellee.

No. 90–1086
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 1, 1990.

Charles R. Chesnutt, Dallas, Tex., for appellant.

Robert Milbank, Jr., Troy C. Vinson, Dallas, Tex., for appellee.

Before REAVLEY, KING and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

Thomas Biggs appeals the district court's ruling that his obligation to pay contractual alimony is a non-dischargeable debt under section 523(a)(5) of the Bankruptcy Code. We affirm.

I.

The marriage between Thomas Biggs and Elizabeth Biggs ended in divorce in April of 1985. The parties' rights with regard to property of the marriage and their post-divorce obligations were set out in an Agreement Incident to Divorce, which was signed by Mr. and Mrs. Biggs and approved by the state court. Article 5 of the Agreement required Mr. Biggs to pay to Mrs. Biggs $3000 per month for 121 consecutive months beginning in May of 1985. The amount of the monthly payment could be reduced if Mr. Biggs' average monthly income underwent a substantial reduction, but in no case were the payments to fall below $2000 per month. The agreement indicated that Mr. Biggs undertook the obligation to make these payments, which were labelled "alimony," "in recognition of a general duty of support because of the marital and family relationship of the parties." The Agreement also provided: "The support obligation of Thomas Edward Biggs ... embodied in this article is unrelated to the division of the community estate and is not intended to constitute a form of payment to [Elizabeth Biggs] for any rights or interests in the community estate."

After the divorce became final, Mr. Biggs began making the payments required by the Agreement. Within approximately six months, however, Mr. Biggs started making only partial payments, which he continued to do until August of 1988, when the payments stopped completely. Mrs. Biggs then brought suit in Texas state court seeking enforcement of the Agreement. On February 10, 1989, the court entered a Judgment for Enforcement rendering a money judgment for the past-due payments in Mrs. Biggs' favor.

On February 21, 1989, Mr. Biggs filed a petition for voluntary relief pursuant to

Chapter 13 of the Bankruptcy Code. Mr. Biggs listed Mrs. Biggs as his only unsecured creditor, and he sought a discharge from his obligations under the state court judgment and the Agreement. The bankruptcy court found that the obligation arising out of the Agreement was "in the true nature of alimony, maintenance, or support" and held that the obligation thus was not dischargeable. Mr. Biggs appealed the ruling to the district court. He did not contest the bankruptcy court's factual finding that the payments were support for Mrs. Biggs. Rather, Mr. Biggs argued that because Texas law prohibits court-ordered alimony, contractual payments such as those required by the Agreement do not qualify for non-dischargeability. The district court rejected the argument, holding that so long as an obligation is properly characterized as being in the nature of alimony, maintenance, or support, a party is not entitled to have that obligation discharged in bankruptcy. After concluding that the bankruptcy court properly found that the payments were support, the district court affirmed. Mr. Biggs then brought this appeal.

## II.

Section 523(a) of the Bankruptcy Code states that

A discharge under ... this title does not discharge an individual debtor from any debt—

. . . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .

11 U.S.C. § 523(a). Whether a particular obligation constitutes alimony, maintenance, or support within the meaning of this section is a matter of federal bankruptcy law, not state law. H.R.Rep. No. 595, 95th Cong., 2d Sess. 364, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6320; *see In re Harrell,* 754 F.2d 902, 905 (11th Cir.1985); *Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984). In this case, the bankruptcy court found, and Mr. Biggs concedes, that the payments required by the Agreement were intended to and in fact do provide support for Mrs. Biggs. An application of the plain wording of section 523(a)(5) thus compels the conclusion that the bankruptcy and district courts properly held that the obligation to make those payments is not dischargeable.

Mr. Biggs, however, contends that although the payments were support, the obligation resulting from the Agreement is dischargeable. He argues that only those types of alimony, maintenance, or support specifically provided for by state law are not dischargeable in bankruptcy. Because Texas law does not provide for alimony awards,[1] Mr. Biggs contends that agreements to pay contractual alimony do not come within the scope of section 523(a)(5).

In support of his argument, Mr. Biggs relies on the language requiring that a debt, in order to be dischargeable, be "actually in the nature of alimony, maintenance, or support." Mr. Biggs suggests that this language requires a bankruptcy court to focus not on the purpose of the obligation but on how the particular state would char-

---

1. "The statutes and public policy of [Texas] do not sanction alimony for the wife after a judgment of divorce has been entered." *Francis v. Francis,* 412 S.W.2d 29, 32 (Tex.1967). The Texas Supreme Court has defined "alimony" as an allowance for support that a court orders one spouse to pay the other. *See id.* Because they are not ordered by a court, obligations to make payments to a spouse following a divorce that are assumed in separation agreements or contracts "are *not obligations to pay alimony* and do not violate the public policy of [Texas]." *Id.* at 33.

acterize the obligation—that is, whether the debt would be characterized as an obligation to pay alimony, maintenance, or support, or whether it would be characterized in some other way, such as an obligation to comply with the terms of a contract. He contends that if the quoted language is interpreted as dealing with the purpose of the debt, then it is superfluous because section 523(a)(5) already requires the debt to be for alimony, maintenance, or support. Mr. Biggs thus argues that because a Texas court would characterize the obligation under the Agreement as contractual, the debt is not "actually in the nature of alimony, maintenance, or support."

The argument is unpersuasive as an initial matter because nothing in the language of section 523(a)(5) indicates that the dischargeability of an obligation turns on state laws regulating alimony and support. Had Congress intended state law to be determinative, it likely would have stated that intent expressly. *See Harrell*, 754 F.2d at 904 ("If Congress had intended dischargeability to be determined by whether an obligation could be imposed under state law, it might have addressed dischargeability in those terms."). In fact, as indicated above, the legislative history of section 523(a)(5) demonstrates that Congress determined that state support laws should not be determinative of whether a particular obligation is dischargeable. *Cf. id.* at 905 (holding that a promise to pay post-majority educational expenses was non-dischargeable support even though the relevant state's law does not require such support past the age of majority); *Shaver*, 736 F.2d at 1315–17 (holding that a court decree requiring payment of $197,000 over a ten-year period was non-dischargeable support even though Indiana law did not provide for alimony in the circumstances of the case); *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984) (holding that an agreement to pay sons' college education expenses was non-dischargeable support even though Arkansas law does not require payment of such expenses).

More significantly, Mr. Biggs' argument misconstrues the purpose of subsection (B). Read as a whole, it is clear that Congress enacted this provision simply "to assure that a debt will not be rendered nondischargeable merely because it is designated as alimony, maintenance or support." 3 Collier on Bankruptcy ¶ 523.15[5], at 523–113 (L. King 15th ed. 1990). Congress specifically stated its intention that bankruptcy courts look not at the label a state court or the parties applied to a debt but instead at the purpose of the obligation. Mr. Biggs correctly suggests that this interpretive approach may have been implicitly required by section 523(a)(5) even absent the addition of subsection (B). That Congress chose to make its intent explicit, however, does not render the provision superfluous.

Mr. Biggs argues that his interpretation of section 523(a)(5) also is supported by three decisions from this court holding certain obligations not dischargeable. Two of these cases, *In re Nunnally*, 506 F.2d 1024 (5th Cir.1975), and *Erspan v. Badgett*, 647 F.2d 550 (5th Cir. Unit A June 1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982), involved the dischargeability of obligations resulting from divisions of community property as provided for by Texas law. In *Nunnally*, the court reviewed Texas community property law and determined that "support in the future can play a significant role in the divorce court's property division and that what may appear to be a mere division of assets may in fact, under a Texas decree, contain a substantial element of alimony-substitute, support or maintenance, however termed." *Nunnally*, 506 F.2d at 1027. The court then determined that the obligation at issue was intended to provide support and held that it was not dischargeable. The court in *Erspan* followed this lead and upheld as not clearly erroneous a district court's conclusion that the obligation at issue was intended to provide support to the former spouse and thus was not dischargeable. *See Erspan*, 647 F.2d at 555. In the most recent case, *In re Benich*, 811 F.2d 943 (5th Cir.1987), the court considered the dischargeability of an obligation to make monthly payments required by a property settlement agreement. This court again affirmed after concluding that the bankruptcy court's finding that

the payments were non-dischargeable support was not clearly erroneous. In the decision, the court noted that the bankruptcy court apparently had considered it significant "that the payments were intended as a substitute for any right Mrs. Benich would otherwise have had in Mr. Benich's future military retirement benefits." *Id.* at 945. The decision to affirm, however, was not explicitly based on this observation.

In each of these cases the court determined that the obligation at issue was intended to be support or an alimony-substitute and thus was not dischargeable. Taken together, the cases stand for the proposition that certain obligations resulting from divisions of community property may be non-dischargeable in bankruptcy.[2] Contrary to Mr. Biggs' suggestion, however, the cases do not hold that obligations resulting from divisions of community property or obligations that may somehow be connected to community property are the only types of obligations resulting from a Texas separation or divorce that are not dischargeable.[3] Moreover, Mr. Biggs' limited construction cannot be squared with the language of the statute.

So long as an obligation arises out of an agreement or court order specified in the statute and the purpose of the obligation is to provide alimony, maintenance, or support, the obligation is not dischargeable in bankruptcy. Mr. Biggs has not challenged the lower courts' conclusions that those criteria are met in this case. Accordingly, the district court's judgment is AFFIRMED.

**2.** Certainly, not all obligations imposed in conjunction with a division of community property will automatically be non-dischargeable support. In reviewing the nature of a particular obligation, a bankruptcy court must consider the factors relevant to characterizing the debt, *see Benich,* 811 F.2d at 945, and determine the intent of the court in imposing the obligation.

**3.** Mr. Biggs' reliance on the language in footnote 6 of the *Nunnally* decision is misplaced. The court there stated: "Texas courts are not quick to find that permanent alimony has been ordered, and we are *Erie*-bound to follow in

their tracks. If the payments ordered are 'referable to any property which either spouse may have owned or claimed,' the award is valid." *Nunnally,* 506 F.2d at 1027 n. 6 (quoting *McBean v. McBean,* 371 S.W.2d 930, 932 (Tex.Civ.App.—Waco 1963, no writ)). Review of the full footnote indicates that this passage was directed to the debtor's contention that the obligation was invalid under state law. The discussion had nothing to do with the types of obligations that are not dischargeable pursuant to section 523(a)(5).