| WILLIAMS, Judge.
The defendant, Eric Brown, appeals judgments denying his motion to modify custody of the minor children and finding him in arrears in the amount of $3,072 for his failure to pay one-half of the monthly *686 mortgage payment. The trial court found that modification of the custody arrangement was not in the children’s best interest. For the following reasons, we amend and affirm as amended.
FACTS
Eric and Samantha Brown were married in September 1988 and two sons, J.B. and G.B., were born of the marriage. In April 2000, Samantha filed a petition for divorce and the parties were divorced in May 2003. An August 2000 consent judgment designated the mother, Samantha, as the primary domiciliary parent subject to the father’s visitation every other weekend. In May 2003, she filed a rule for contempt alleging that from June 2002 through May 2003, Eric had failed to pay one-half of the monthly mortgage note on the former marital home as previously ordered by the court. The court found that Eric was in arrears and rendered judgment ordering him to pay the past due amount of $3,072 and $512 per month thereafter.
In January 2003, Eric filed a rule to modify custody and child support. After a hearing, the trial court found that Eric had failed to prove a sufficient change in circumstances to justify a modification of the prior custody award. Alternatively, the court found that even if such a change had occurred, application of the LSA-C.C. art. 134 factors showed that the best interest of the children required that Samantha remain as the [ ^domiciliary parent. The trial court rendered judgment denying the motion to modify child custody and support and ordering that Eric and Samantha attend the YWCA co-parenting seminar and that Eric pay for the educational testing of G.B. Eric appeals both judgments.
DISCUSSION
The father contends the trial court erred in finding him in arrears for failing to pay one-half of the monthly mortgage payment for the marital home. He argues that he is not required to pay the mother that amount because his mortgage debt was discharged in bankruptcy proceedings.
A discharge in bankruptcy serves to bar the enforcement of the obligation discharged by legal proceedings. Earl v. Liberty Loan Corp. of West Monroe, Inc., 193 So.2d 280 (La.App. 2d Cir.1967). A discharge in bankruptcy does not discharge an individual debtor from any debt to a spouse, former spouse or child of the debtor for alimony, maintenance or support of such spouse or child in connection with a separation agreement, a divorce decree or other order of a court. 11 U.S.C.A. § 523(a)(5).
Generally, the determination of whether an obligation arising out of a divorce proceeding constitutes maintenance or support within the meaning of Section 523(a)(5) is a matter of federal law rather than state law. Biggs v. Biggs, 907 F.2d 503 (5th Cir.1990); Goin v. Rives, 808 F.2d 1391 (10th Cir.1987). Federal courts have held that a court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation. Goin, supra. Factors which are pertinent to a determination that a debt is support include situations where the agreement or decree fails to |3explicitly provide for spousal support under circumstances in which the spouse needs support, and when there are minor children and an imbalance of income. Goin, supra. The trial court’s finding concerning the nature of the obligation will not be set aside unless clearly erroneous. Goin, supra.
In the present case, the father filed a bankruptcy petition listing the mortgage on the marital home in the schedule of secured debts. However, the statutory and jurisprudential authority cited does *687 not support the father’s position that his obligation to pay an amount equal to one-half of the monthly mortgage payment was discharged in bankruptcy. The record shows that when the parties separated, the mother was working part-time as a teacher’s aide and was the primary caretaker of the minor children. In addition, the judgment did not expressly provide for spousal support despite her apparent need and the father’s obligation involved assistance to provide housing for the mother and children.
Based upon this record, we cannot say the trial court was clearly wrong in finding that the father’s court-ordered obligation to pay one-half of the monthly mortgage payment was for the intended purpose of providing support to the spouse and children. Consequently, the trial court correctly concluded that the father’s obligation was not dischargeable in bankruptcy and we shall affirm the judgment ordering him to pay the arrear-age amount of $3,072, plus interest and the remaining monthly payments. The assignment of error lacks merit.

Custody

The father contends the trial court erred in finding that he failed to 14establish a sufficient change in circumstances to justify modification of the custody award. He argues that the evidence shows that awarding him domiciliary custody is in the children’s best interest.
The primary consideration in making a child custody determination is always the best interest of the child. LSA-C.C. art. 131; Powell v. Powell, 28,911 (La.App.2d Cir.12/11/96), 684 So.2d 1084. In determining the best interest of the child, the court shall consider all relevant factors, which may include: the capacity and disposition of each party to give the child love, affection, spiritual guidance, to continue the education of the child and to provide the child’s material needs; the length of time the child has lived in a stable, adequate environment; the permanence, as a family unit, of the existing and proposed custodial homes; the moral fitness of each party insofar as - it affects the welfare of the child; the home, school and community history of the child; the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference; the willingness of each party to facilitate a close and continuing relationship between the child and the other party; and the responsibility for the care and rearing of the child previously exercised by each party. LSA-C.C. art. 134.
When determining the best interest of the child, there must be a weighing and balancing of factors favoring or opposing custody in'respective competing parents on the basis of the evidence presented in each case. A trial court’s determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Ramphrey v. Ramphrey, 32,560 (La. App.2d Cir.12/8/99), 749 5So.2d 835; Powell, supra. If a considered decree has not been rendered, the party seeking to modify the custody arrangement is required to prove that a change of circumstances materially affecting the welfare of the child has occurred since the original custody decree and that the proposed modification is in the best interest of the child. Evans v. Lites, 30,632 (La.App.2d Cir.6/24/98), 714 So.2d 914. An appellate court is required to extend great weight to a trial court’s factual conclusions which are based upon reasonable evaluations of credibility and reasonable inferences of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989); Patrick v. Patrick, 34,799 (La.App.2d Cir.4/4/01), 785 So.2d 169.
In the present case, the father presented testimony by Dr. Bobby Stephenson, a *688 psychologist who evaluated G.B. and J.B. in October 2002. Dr. Stephenson testified that at the father’s request, he administered psychological tests to the boys and that G.B.’s results showed a difficulty with reading and his responses to ink blots indicated he was experiencing emotional distress. Dr. Stephenson stated that G.B. felt his mother was less attentive than in the past because she was busy studying. Stephenson testified that J.B. seemed to have difficulty concentrating on what was said to him and that the testing showed he did best with perceptual motor skills and least well with common sense judgment and problem solving. J.B. said that he did not like his mother’s friend, Jeff Duggans, who had given him three or four “licks” on the backside with a wooden spoon. Stephenson reported that both boys wanted to preserve the relationship with each parent and both said they wanted to live with their father. However, Stephenson | rJestified that when he saw the boys again in March 2003, J.B. said he did not want any schedule with the parents, but wanted to come and go with either one as he pleased and spend more time with his father.
Dr. E.H. Baker, a psychologist appointed by the court, testified that he interviewed the mother, father, J.B. and G.B. in April 2003 and prepared a written report. Dr. Baker stated that each boy said he would prefer to live with the father, who took them shopping, to the movies and to sports activities. Dr. Baker opined that the boys were old enough to express a preference for their living arrangement. However, he explained that one needed to consider their preference along with other factors to determine which situation would be in the child’s best interest. Baker testified that the court should consider a parent’s participation in helping the children with their academic work.
Carol Holloway, who was G.B.’s fourth grade home room and math teacher, testified that he possessed excellent math skills, but experienced difficulty with reading comprehension. Holloway stated that G.B. was the subject of an individualized education plan (“IEP”), which provided for accommodations to assist G.B. with test-taking that were needed because of his mild to moderate reading disability. Holloway testified that she met both parents when G.B. registered for school. She stated that she spoke with the mother by telephone several additional times regarding the LEAP test and the availability of study materials to help G.B. prepare at home. Holloway testified that the mother seemed very committed to helping G.B. with his schoolwork and was knowledgeable about the IEP provisions.
17Mark Bryan testified that he is the store director at Brookshire’s Grocery in Rayville and that the father worked as the grocery manager at the store. Bryan stated that the father is responsible for ordering groceries and keeping products stocked on the shelves. Bryan testified that he had “discussed” changing the father’s work schedule if he obtained domiciliary custody. Bryan would not specify what the father’s weekly work schedule would be in such a situation, stating that the father did not have a “set schedule” of work hours. However, Bryan testified that on Monday and Thursday nights, someone must work the overnight shift to get the groceries on the shelves for the next day and that the father had been working those shifts each week. Bryan stated that if the father “needs to be with his kids, he will not work the overnight shift.”
The father, Eric Brown, testified that he has been working at the store Monday and Thursday nights from 5 p.m. to 6 a.m. placing groceries on the shelves. The fa *689 ther stated that he had spoken with his supervisor, Mark Bryan, about his work schedule if awarded domiciliary custody and that “we’ve been talking seven [a.m.] to three [p.m.]” during the school week. The father testified that .an assistant store manager had wanted to switch jobs with him to work the overnight shift. He stated that he had taken his sons to Dr. Stephenson for a psychological evaluation because they had expressed a desire to live with him and because of his concern about discipline of the boys by Duggans, the mother’s boyfriend. The father testified that the boys had complained about a lack of privacy because Duggans’ two children were often around the house and that J.B. had IsSeemed upset at getting spanked with a wooden spoon by Duggans.
Additionally, the father stated that when the boys have homework diming his weekend visitation, he and his current wife help them “when we have time.” He acknowledged that he does not read well and that he realized G.B. may have a similar reading problem. The father testified that he had not met with any of his sons’ teachers during the fall of 2003 and that he did not know that G.B;’s reading teacher was not following the IEP. The father stated he was aware that G.B. has a speech delay, but that he “would not call that a major concern I guess, as far as his studies.”
The mother, Samantha Brown, testified that she began nursing school in January 2002 and completed the LPN program in May 2003. She stated that she works from 7 a.m. to 3 p.m. weekdays at the Landmark Nursing and Rehabilitation Center and that her schedule is posted two weeks ahead of time. The mother testified that she helps G.B. with reading every night and that his IEP mainly provided for modifications to help him read and understand exam instructions. She stated that when leaving for work in the morning, she drops off G.B. at her friend’s house to wait for the school bus. After school, the mother picks up G.B. at his daycare at the YMCA. The mother testified that on days when J.B. has sports activities-after school she picks him up when he’s done or he takes the bus home. The mother stated that J.B. was 14 years old and when he did not have sports after school he could stay at home by himself for a brief period until she arrived.
The mother further testified that after the rule to modify custody was filed, the boys said they would like to spend more time with their father, but |fldid not say they wanted to live primarily with the father. The mother stated that she was opposed to the boys living primarily with the father because on prior occasions during his weekend visitation, he did not help the boys complete their homework, he did not help G.B. to read, he has difficulty reading himself and he works in the evenings. The mother testified that when she heard about Duggans spanking J.B. with a spoon, she asked the boys about the incident and they said he had been playing.
In his brief, the father asserts that his supervisor agreed to alter his work schedule so he would not need to work the overnight shift if he was awarded domiciliary custody. However, the supervisor would not commit to giving the father a specific schedule or even identify who else would work the overnight shift in such a situation. We note that when the father previously exercised physical custody of the boys in the summer of 2001, he continued to work the overnight shift even though this meant leaving the children in the care of a person whom at the time he had known for only a few months, his current wife Amy Brown.
The trial court heard the testimony and weighed the credibility of the witnesses. In its oral reasons- for judgment, the court *690 specifically found that the mother was a very credible witness and that the father was evasive. In addition, finding that the father failed to prove a change in circumstances materially affecting the children’s welfare, the court considered the Article 134 factors and concluded that modification of custody would not be in the best interest of the children.
In applying the Article 134 factors to the facts of this case, the court [infound that although both parents have love and affection for their sons, the boys’ relationship with their father lacked depth and was primarily based upon the fun things they did together. Noting that the boys expressed a desire to spend more time with their father, the court opined that their preference was based not on living in one household or the other, but reflected the boys’ wish to have an improved relationship with their father.
Additionally, the court found that the factor concerning the parties’ capacity and disposition to continue the education of the children “overwhelmingly” favored the mother, based on the evidence that she was more involved with meeting the educational needs of the boys, particularly with respect to G.B. In contrast, the father tended to leave educational issues to the mother, he seemed unwilling to pay for G.B.’s testing and during his visitation there were times when the boys did not do their homework. In the court’s view, the evidence indicated that the mother was the parent who was more focused on providing for the children’s needs and that she placed their interests ahead of her own.
Regarding the stability of the children’s living environment, the court noted that the mother remained in the marital domicile where the boys were reared, whereas the father was newly married and preparing to move, which would have required a mid-year change in schools for both children if he were awarded custody. With respect to the moral fitness of each party relative to the welfare of the children, the court found that this factor roughly balanced out between the parties. The court found that neither party did very well in encouraging a close relationship between the children l^and the other parent and that both parents needed to communicate more effectively and needed to attend a co-parenting class.
After reviewing the entire record, we cannot say the trial court abused its discretion in applying the Article 134 factors to the circumstances of this case and in concluding that modification of the custody arrangement was not in the best interest of the children. Consequently, the trial court correctly denied the father’s rule to modify custody. The assignment of error lacks merit. We note with concern that the record does not reflect that the parties have attended the co-parenting seminar as ordered by the district court. Accordingly, we shall amend the judgment to order the parties either to submit written verification of such attendance for inclusion in this record or to register for the next available seminar within 15 days from the date this court’s opinion becomes final and to attend the seminar at the YWCA.
CONCLUSION
For the foregoing reasons, the trial court’s judgment ordering the payment of the mortgage arrearage amount is affirmed. The judgment denying modification of custody is amended and Eric Brown and Samantha Brown are hereby ordered to either submit written verification of attendance of the co-parenting seminar to the district court for inclusion in this record or register for the next available seminar within 15 days from the date this court’s opinion becomes final and to attend the seminar at the YWCA. The *691 judgment is otherwise affirmed. Appeal costs are assessed to the appellant.
AMENDED AND AFFIRMED AS AMENDED.