**Mabel Smith CROUCH,**
**Plaintiff-Appellee,**

**v.**

**Parsons Thomas CROUCH,**
**Defendant-Appellant.**

**No. 76–2321.**

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1978.

Philip I. Palmer, Jr., Dallas Tex., for defendant-appellant.

Roger W. Kraus, Richardson, Tex., for plaintiff-appellee.

Before INGRAHAM, GEE and TJOFLAT, Circuit Judges.

GEE, Circuit Judge:

This is a suit between former spouses for damages caused by the breach of a voluntary separation agreement. Following a trial to the court, the district judge ruled that the aggrieved ex-wife, Mabel Crouch, was entitled to receive from her former husband the sum of $45,000. Appealing this judgment, Mr. Crouch raises two issues for our consideration: whether the lower court should have refused to exercise diversity jurisdiction [1] because of the domestic relations overtones in the case and whether the district judge erred in fashioning its award of damages. We turn first to the more important question of jurisdiction.

Federal courts have traditionally refused to exercise diversity jurisdiction in a variety of domestic relations cases, including suits for divorce and alimony, *see Ohio ex rel. Popovici v. Agler,* 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930); *Barber v. Barber,* 62 U.S. (21 How.), 582, 584, 16 L.Ed. 226 (1859) (dictum); child custody actions, *see Ex parte Burrus,* 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890); disputes over visitation rights, *see Solomon v. Solomon,* 516 F.2d 1018 (3d Cir. 1975); *Hernstadt v. Hernstadt,* 373 F.2d 316 (2d Cir. 1967); suits to establish paternity and to obtain child support, *see Buechold v. Ortiz,* 401 F.2d 371 (9th Cir. 1968); *Albanese v. Richter,* 161 F.2d 688 (3d Cir.), *cert. denied,* 332 U.S. 782, 68 S.Ct. 49, 92 L.Ed. 365 (1947); and actions to enforce separation or divorce decrees still subject to state court modification, *see Lynde v. Lynde,* 181 U.S. 183, 21 S.Ct. 555, 45 L.Ed. 810 (1901); *Morris v. Morris,* 273 F.2d 678 (7th Cir. 1960). The reasons for federal abstention in these cases are apparent: the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts. *See Armstrong v. Armstrong,* 508 F.2d 348, 349–50 (1st Cir. 1974); *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* 490 F.2d 509, 514 (2d Cir. 1973); C. Wright, Handbook of the Law of Federal Courts § 25, at 97 (3d ed. 1976).

While we approvingly acknowledge the so-called domestic relations exception to diversity jurisdiction,[2] we find it inapplicable to the instant case, which involves little more than a private contract to pay money between persons long since divorced, whose children are well into adulthood. We are faced here with no questions of custody or parental rights, no pending state court action or agreement to litigate in state court, and no threat that the former spouses will seek to play one court system off against

1. When Mr. and Mrs. Crouch separated in 1957, both were North Carolinians. In the year following Mr. Crouch moved to Texas, where he still resides.

2. No Fifth Circuit case has discussed the domestic relations exception, although we did affirm a district judge's observation that federal courts should not exercise diversity jurisdiction in divorce actions. *Lutsky v. Lutsky,* 433 F.2d 346 (5th Cir.) (per curiam), *affirming* 310 F.Supp. 517 (S.D.Fla.1970). *See also In re Freiberg,* 262 F.Supp. 482 (E.D.La.1967).

the other. *Solomon v. Solomon,* 516 F.2d at 1025. Nor do we perceive any strong state interest in the adjudication of this suit or any special competence on the part of state courts, other than their superior ability to interpret state law, which is always present in diversity suits. Because none of the rationales for the domestic relations exception obtain in this case—with the possible exception of congested federal dockets—we uphold the district court's exercise of jurisdiction and proceed to determine the merits.[3]

The separation agreement in dispute here was executed in 1974, following Mr. Crouch's persistent failure to honor the support agreement that was drawn up when he and Mrs. Crouch separated in 1957. Under the terms of the more recent agreement, Mr. Crouch was obligated to pay his former wife (1) the sum of $2,500, (2) $4,000 annually for five years, and (3) $150 per month for the rest of her life. Appellant fulfilled these obligations for a time, paying a total of $9,000 but then breached the agreement, and the present litigation ensued.

The lower court found that Mr. Crouch had repudiated the separation agreement and that his former wife had accepted his repudiation. Appellant does not contest these findings but contends that the district court erred when it calculated the damages for appellant's breach of his promise to pay monthly installments of $150 by multiplying that figure times the factor for the number of months appellee is expected to live under the pertinent actuarial table. Mr. Crouch's argument is that this evaluation improperly ignores the separation agreement's disability clause, which relieved him of the duty to make any monthly payments in the event of his total and permanent incapacitation. While the district court rejected Mr. Crouch's claim of present disability resulting from his diabetic condition, appellant now contends that the possibility of future incapacity precluded the court's lump-sum award. If we were to accept this argument, the only alternative form of relief would be an order decreeing specific performance as to future installments.[4] 4 A. Corbin, Corbin on Contracts § 969, at 893 (1951).

Texas law provides no specific answer to appellant's argument.[5] Appellee's position that the disability clause should be ignored receives some support from *Rapid Transit Lines, Inc. v. Transit Ads, Inc.,* 401 S.W.2d 276 (Tex.Civ.App.—Eastland 1966, no writ), which involved the anticipatory repudiation by a transit company of an advertising firm's exclusive advertising rights on the transit company's buses. In that case the court not only upheld the award of damages for the initial term of the contract but also upheld the award of damages for a five-year option contained in

3. In *Gullet v. Gullet,* 188 F.2d 719 (5th Cir. 1951), this court heard a suit to collect unpaid alimony under a final divorce decree but did not discuss the domestic relations exception. And a district court within our circuit did likewise in *Hemphill v. Hemphill,* 398 F.Supp. 1134 (N.D.Ga.1975). We find *Gullet* and *Hemphill* indistinguishable from this case, all being actions merely to recover a fixed sum.

4. In his brief, appellant argues that relief should be had only as to accrued payments, but this is untenable. One who breaches a contract may not escape liability by reason of the injured party's inability to prove damages with exactness. *See Dessommes v. Dessommes,* 505 S.W.2d 673, 680 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.); *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 428, 115 S.W.2d 1097, 1099 (1938); *Texas Sanitation Co. v. Marek,* 381 S.W.2d 710, 715 (Tex.Civ.App.—Corpus Christi 1964, no writ).

5. We arrive at the applicable law by resort to Texas' conflicts rules, to which we are bound by *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under those choice of law rules the applicable law in a breach of contract case is generally that of the place where the contract was made—in this case, Texas—unless the agreement is to be performed solely in another jurisdiction, in which case the apposite law is that of the place of performance. *Ramirez v. Autobuses Blancos Flecha Roja, S.A. De C.V.;* 486 F.2d 493, 496 (5th Cir. 1973) (applying Texas law). Without belaboring the point, we observe that the separation agreement in this case will be at least partially performed in Texas because the payor resides in that state. Thus, Texas law is controlling. *See id.*

the contract, even though the option was conditioned on the city's renewal of the transit company's franchise. Nonetheless, since the court in *Rapid Transit* offered no explanation for this ruling, we must consult general principles of Texas contract law.

In Texas the anticipatory repudiation of a contract entitles the wronged party to recover, as of the date of repudiation, the present value of all that he would have received had the contract been performed. *See Republic Bankers Life Insurance Co. v. Jaeger,* 551 S.W.2d 30, 31 (Tex.1976); *Pollack v. Pollack,* 39 S.W.2d 853, 855 (Tex. Comm'n App.1931, holding approved); *Continental Casualty Co. v. Boerger,* 389 S.W.2d 566, 568 (Tex.Civ.App.—Waco 1965, writ dism'd); *Patterson v. Magill,* 259 S.W.2d 954, 956 (Tex.Civ.App.—Austin 1953, no writ). To take an analogous case, if an insurance company repudiates its agreement to pay monthly installments to a disabled policyholder, the insured can, by bringing an action for anticipatory breach, recover the value of those installments in lump sum. *See Lumbermens Mutual Casualty Co. v. Klotz,* 251 F.2d 499 (5th Cir. 1958) (applying Texas law); *Williams v. Mutual Benefit Health & Accident Ass'n,* 100 F.2d 264 (5th Cir. 1938) (applying Texas law); *Pan American Life Insurance Co. v. Garrett,* 199 S.W.2d 819, 824–25 (Tex.Civ. App.—El Paso 1946, no writ); *Englehart v. Volunteer State Life Insurance Co.,* 195 S.W.2d 798, 802 (Tex.Civ.App.—Eastland 1946, writ ref'd n.r.e.) (dictum). But that sum would have to be calculated with reference to the probable duration of the disability as found by judge or jury. *See Universal Life & Accident Insurance Co. v. Sanders,* 129 Tex. 344, 348, 102 S.W.2d 405, 407–08 (Tex.Comm'n App.1937, opinion adopted); *Commercial Travelers Casualty Co. v. Dymke,* 279 S.W.2d 405 (Tex.Civ.App.—Eastland 1955, no writ).

While we agree with appellant that repudiation does not change the terms of the contract, *see Newman v. San Antonio Traction Co.,* 155 S.W. 688, 690 (Tex.Civ. App.—San Antonio 1913, no writ), and that the wronged party is limited to recovering expectancy damages, we cannot agree that the lower court's damage award would have been proper only if appellee had shown that her former husband will not become disabled during her lifetime. Appellee need prove damages only to a reasonable certainty, *see Fredonia Broadcasting Corp. v. RCA Corp.,* 481 F.2d 781, 804 (5th Cir. 1973) (applying Texas law); *International Harvester Co. v. Kesey,* 507 S.W.2d 195, 197 (Tex.1974); *Bildon Farms, Inc. v. Ward County Water Improvement District No. 2,* 415 S.W.2d 890, 896–97 (Tex.1967), a standard we find satisfied in this case. The possibility of future incapacity is a much too speculative reason for denying lump-sum recovery.[6] Whatever uncertainty does exist about the damages in this case has been caused by Mr. Crouch's own failure, over the course of seventeen years, to abide by the separation agreements executed between himself and his former wife. This failure is in itself a persuasive argument for the inadequacy of a decree ordering specific performance of future monthly payments under the 1974 contract. Furthermore, we note that the purpose of the disability clause is to relieve Mr. Crouch of the duty to make monthly payments during a time of financial hardship. Mr. Crouch was found able at the time judgment was entered in this case, a time which—if premature—was determined by Mr. Crouch's own defaults.

For the reasons stated above, the judgment of the trial court is hereby AFFIRMED.

6. While it occurs to us that Mr. Crouch's life expectancy could be taken into account in determining the possibility of future incapacity, *compare Pollack v. Pollack,* 39 S.W.2d 853 (Tex.Comm'n App.1931, holding approved), since one is certainly disabled at death, the 1974 agreement, contains an insurance clause protecting against Mr. Crouch's predecease. This makes appellant's life expectancy irrelevant.