Thomas A. BENNETT, Appellant,

v.

Patricia A. BENNETT.

No. 80–2359.

United States Court of Appeals, District of Columbia Circuit.

Argued April 26, 1982.

Decided July 23, 1982.

Melvin A. Marshall, Washington, D. C., for appellant.

Mark A. Bayer, Washington, D. C., for appellee.

Before BAZELON, Senior Circuit Judge, EDWARDS and BORK, Circuit Judges.

BAZELON, Senior Circuit Judge:

This case is profoundly sad. A father alleges that his former wife kidnapped their child and took him out of the District of Columbia to the State of Ohio. The father invokes the federal diversity forum to bring a suit in tort, asking for both monetary damages and injunctive relief. We are asked to determine if he can maintain that suit. We do not think that any answer we could give would make this case any less sad. But we do give an answer: The dis-

trict court does have jurisdiction to give the father monetary relief, but it does not have jurisdiction to provide the injunctive relief that the father also seeks. We vacate the action of the district court, and remand the case for further proceedings.

## I. BACKGROUND

As best as we can tell from the record, the facts of this case are as follows: Plaintiff-appellant and defendant-appellee are the father and mother, respectively, of three minor children, Steven, Monique, and Patrice. In 1974, defendant obtained a divorce decree from the Domestic Relations Court of Trumbull, Ohio in a hearing at which plaintiff did not appear. The Ohio decree also awarded her custody of all three children.

In 1978, defendant—informally, but allegedly voluntarily—turned custody of the two older children, Steven and Monique, over to plaintiff. Plaintiff brought them to his home in the District of Columbia. In 1979, he sued in the Family Division of the Superior Court of the District of Columbia for formal custody of Steven and Monique. Defendant contested plaintiff's request for legal custody and urged that the children be returned to her, but the District of Columbia court found that (1) the Ohio decree granting custody to defendant was not entitled to full faith and credit,[1] and (2) the best interests of the children would best be served by continuing them in the custody of plaintiff.

Later that year, defendant allegedly went to plaintiff's home in the District of Columbia while he was out of the house and took back Steven and Monique by force. It is that act that forms the basis for this suit. Defendant took the children to her home in Ohio. Plaintiff was able—how is not exactly clear—to regain possession of Monique, but Steven remains in the hands of the defendant. Plaintiff also took legal action on a number of fronts: He asked for and obtained a decree from the District of Columbia Superior Court which held defendant in contempt and ordered her arrest should she appear in the District of Columbia. He may also have begun proceedings in Ohio. Finally, he initiated this suit in the Federal District Court for the District of Columbia.

Plaintiff's original complaint before the district court alleged that defendant's taking of Steven and Monique constituted a tort, and asked for both monetary relief amounting to $525,000 and an injunction "directing and enjoining the defendant from any interference with the custody rights of the plaintiff" over both children. The complaint failed, however, to specify the exact basis for the court's personal jurisdiction over the defendant.

On October 14, 1980, plaintiff moved for summary judgment and for preliminary and permanent injunctive relief. During a status call on October 20, however, the district court noted the jurisdictional flaw in plaintiff's complaint and dismissed his suit without prejudice. The court also denied the motions for summary judgment and for a temporary restraining order, again without prejudice. Four days later, plaintiff filed a motion for expedited reconsideration, attaching an amended complaint that alleged in personam jurisdiction under the District of Columbia Long Arm Statute, D.C.Code Ann. § 13–423(a)(3) (1981). On October 29, 1980, the district court without explanation, denied plaintiff's motion for reconsideration. Plaintiff appealed to this court.

## II. DIVERSITY JURISDICTION AND THE DOMESTIC RELATIONS EXCEPTION

In their briefs on appeal, both counsel devote most of their attention to whether the taking of a child by one parent from another in violation of a custody decree can constitute a tort under District of Columbia law. We address that issue in Part III of this opinion. We must first, however, re-

---

1. Cf. Foster & Freed, *Child Snatching and Custodial Rights*, 28 HAST. L.J. 1011, 1012–14 (1977) (discussing ambiguities, prior to passage of Parental Kidnapping Prevention Act, in state court's obligations under Full Faith and Credit Clause to respect each other's custody decrees).

solve a problem not addressed by either party: whether the diversity jurisdiction of the federal courts extends to tort suits of this kind.

■ Federal courts long ago carved out a "domestic relations exception" to the normal exercise of their diversity jurisdiction. *See generally* 13 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3609 (1975). Under the "domestic relations exception," a federal court will not take jurisdiction over a case if that would require it to grant a divorce, determine alimony or support obligations, or resolve parental conflicts over the custody of their children. *See In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 1500 (1890); *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858); *Wasserman v. Wasserman*, 671 F.2d 832, 834 (4th Cir. 1982); *Sutter v. Pitts*, 639 F.2d 842, 843 (1st Cir. 1981). A federal court should not, however, "simply avoid all diversity cases having intrafamily aspects." *Cole v. Cole*, 633 F.2d 1083, 1088 (4th Cir. 1980). As the Fourth Circuit has put it, "[s]o long as diversity jurisdiction endures, federal courts cannot shirk the inconvenience of sometimes trading wares from the foul rag-and-bone shop of the heart." *Id.* at 1089. Suits whose essence is in, for example, tort or contract, and which do not require the federal court to exceed its competence, will be heard. *See id.; Crouch v. Crouch*, 566 F.2d 486 (5th Cir. 1978); *Spindel v. Spindel*, 283 F.Supp. 797, 812 (E.D.N.Y.1968) (per Weinfeld, J.).[2]

### A. The Cause of Action and the Claim for Damages

■ With respect to plaintiff's cause of action and his claim for monetary damages, we see no bar to the exercise of federal diversity jurisdiction in this case. In a recent decision, the Fourth Circuit recognized the existence of federal diversity jurisdiction in a tort suit arising out of an alleged abduction by one parent of a child in the custody of the other parent. *Wasserman v. Wasserman*, 671 F.2d 832. We fully support the reasoning of that decision. A federal court is entirely competent, in this case as much as any other, to determine traditional tort issues such as the existence of a legal duty, the breach of that duty, and the damages flowing from that breach. Although the existence of a legal duty in this case may depend in whole or in part on the validity and effect of the various state court decrees in existence at the time of the alleged tort, the task of determining such validity and effect is also not beyond the competence of the federal courts. *See id.; Keating v. Keating*, 542 F.2d 910 (4th Cir. 1976).

### B. The Claim for Injunctive Relief

The claim for injunctive relief poses a much more difficult issue, however. We note that *Wasserman v. Wasserman* specifically encompassed only *retrospective* relief. 671 F.2d at 835. Indeed, the court relied quite strongly on the fact that it was not facing "a case in which the parties actually seek a declaration of present or future rights as to custody or visitation." *Id.* More important, we think there are strong reasons for us to refuse to entertain a request for prospective relief of the sort plaintiff seeks.

The decision whether or not to grant injunctive relief in this case would not merely depend on the past rights and wrongs of the parties to the suit. Rather, it would also require an inquiry into the present interests of the minor children Steven and Monique Bennett. *See Abdul-Rahman Omar Adra v. Clift*, 195 F.Supp. 857, 865–66 (D.Md.1961); *cf.* Note, *A Damages Remedy for Abuses by Child Protection Workers*, 90 YALE L. J. 681, 688–94 (1981); RESTATEMENT (SECOND) OF TORTS § 942 (1979) (interests of third parties must be taken into account in determining injunctive relief in tort). Such an

---

2. Federal courts have also agreed to enforce, under the full faith and credit clause, monetary obligations arising out of final state divorce decrees that are no longer subject to modification. *See* 13 C. WRIGHT, A. MILLER, & E. COOPER,

FEDERAL PRACTICE AND PROCEDURE § 3609, at 671–674 (1975). As best as we can tell, however, no Federal courts have "enforced" State court custody decrees. *See id.* at 674; *see also* Part II(B) *infra*.

inquiry is within the peculiar province, experience, and competence of the state courts.[3] For a federal court to try its hand at the task, even during the course of a tort suit, would—in the absence of an overriding federal interest [4]—seriously compromise the principles underlying the domestic relations exception. *See Kilduff v. Kilduff,* 473 F.Supp. 873 (S.D.N.Y.1979); *cf. Sutter v. Pitts, supra; Hernstadt v. Hernstadt,* 373 F.2d 316, 318 (2d Cir. 1967).[5] Moreover, we are faced in this case with the fact that at least one, and possibly two, state courts seem to claim continuing jurisdiction over the custody of Steven and Monique.

Plaintiff stated in his brief supporting his motion for expedited reconsideration before the district court that "[o]nly a federal court's process can be effective in this matter, if, as counsel for plaintiff believes[,] the Ohio [state] Court would not enforce the District [of Columbia custody] decree...." We sympathize with this concern. The mischief and human suffering that arise out of the failure of interstate cooperation in matters of child custody are well known. *See generally Parental Kidnapping Prevention Act of 1979, Joint Hearings on S.105 Before the Subcomm. on Criminal Justice of the Senate Comm. on the Judiciary and Subcomm. on Child and Human Development of the Comm. on Labor and Human Re-*

*sources,* 96th Cong., 2d Sess. (1980); Foster & Freed, *Child Snatching and Custodial Fights,* 28 Hast.L.J. 1011 (1977). But there are better ways of resolving that dilemma than by giving the federal courts the power to determine the custody of children. For example, many states have adopted the Uniform Child Custody Jurisdiction Act. Even more important, the Congress recently passed the Parental Kidnapping Prevention Act of 1980, Pub.L.No.96–611, §§ 6–10, 94 Stat. 3568 (1980) (codified at 18 U.S.C. § 1073 note, 28 U.S.C. § 1738A, and scattered sections of 42 U.S.C.). The three main provisions of that Act (1) significantly strengthen the obligation of states to enforce each other's custody decrees under the Full Faith and Credit Clause, (2) make available to the states the services of a federal Parent Locator Service, and (3) clarify the intent of Congress with respect to the federal role in the criminal prosecution of parents who kidnap their children and transport them across state lines. We note that conspicuously absent from this comprehensive enactment is any provision creating or recognizing a direct role for the federal courts in determining child custody. Indeed, the legislative history of the Act makes clear that Congress deliberately and emphatically omitted such a role.[6] In the

---

**3.** *See Lehman v. Lycoming County Children's Services Agency,* —— U.S. ——, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982) (denying federal habeas corpus jurisdiction in a challenge to state-court involuntary termination of parental rights).

**4.** *See, e.g., Abdul-Rahman Omar Adra v. Clift,* 195 F.Supp. 857, 865 (D.Md.1961) (unique federal interest in application of international law).

**5.** We note—only for the purpose of illustrating the degree of caution with which we should approach this issue—that a number of federal courts have declined to involve themselves in disputes over child custody even when federal constitutional questions were at stake. *See, e.g., Bergstrom v. Bergstrom,* 623 F.2d 517 (8th Cir. 1980); *Huyhn Thi Anh v. Levi,* 586 F.2d 625 (6th Cir. 1978).

**6.** For example, one of the House sponsors of the Act, testifying in a Senate hearing on the subject, said that "[t]he proposal we consider today is a paradigm of the problem of maintaining a federal balance." *Joint Hearing on*

*the Parental Kidnapping Act of 1979 Before the Subcomm. on Criminal Justice of the Senate Comm. on the Judiciary and the Subcomm. on Child and Human Development of the Senate Comm. on Labor and Human Resources,* 96th Cong., 2d Sess. 19 (1980) (testimony of Cong. J. Duncan). He then explained that

I have long believed that social problems should be handled at the lowest appropriate level of government. Though I would prefer to have this question addressed at the State level, it has not been. For this to happen would require all 50 States to subscribe to the interstate compact [*i.e.,* the Uniform Child Custody Jurisdiction Act], both in letter and spirit, and make it impossible for any parent to find a safe haven to harbor a child taken contrary to a court order across a State line. I don't believe we can except [sic] this level of cooperation. In one sense, we have an interstate compact already called the Constitution of the United States. We have an interstate compact commission called the Congress of the United States, and we can handle this problem here.

instant case, we note that plaintiff has litigation going forward in the District of Columbia court system and that remedies available in that forum have not been exhausted.

In light of the above, we hold that the district court does not have jurisdiction to give injunctive relief in this case.

### III. OTHER ISSUES

■ Having resolved the jurisdictional question apparent on the face of plaintiff's complaint, the remaining issues left to us are exceedingly easy. First, it seems clear that plaintiff's amended complaint states a cause of action under the laws of the District of Columbia. *See Hinton v. Hinton,* 436 F.2d 211 (D.C.Cir.1970) (relying in part on Restatement of Torts § 700 (1938)). The tort of "harboring" a minor child contrary to the rights of its lawful, custodial parent applies to a non-custodial parent as well as to a grandparent (as in *Hinton*) or a member of the general public. *See* RESTATEMENT (SECOND) OF TORTS § 700 comment c (1977). *Cf. Wasserman v. Wasserman,* 671 F.2d 832 (4th Cir. 1982); *Kajtazi v. Kajtazi,* 488 F.Supp. 15 (E.D.N.Y.1978). Because the complaint alleges the commission of the tort within the District of Columbia, the district court has personal jurisdiction over the defendant. *See* D.C.Code Ann. § 13–423(a)(3) (1981).

■ Moreover, we conclude that, under these circumstances, it was error for the district court to reject without explanation plaintiff's amended complaint, which clarified the source of the court's personal jurisdiction. Such amendments to cure minor errors in original pleadings "shall be freely given when justice so requires." Fed.R.

We must not fear to use the Federal Government at an appropriate level when necessary. Requiring full faith and credit be given to an extant State court decree before the Federal law swings into effect, saves this measure from Federal imbalance in a State problem. *By reserving the Federal role to the creation of a Federal Parent Locator Service and FBI investigation after a sufficient lapse of time, we hold Federal interference to the minimum.*

Civ.P. 15(a); *see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Moreover, timely amendment after dismissal is entirely appropriate when it explains the source of the court's personal jurisdiction. *Cf. Thomas v. E. I. DuPont de Nemours & Co.,* 574 F.2d 1324, 1329 (5th Cir. 1978). Thus, the district court's "outright refusal to grant the leave without any justifying reason appearing for the denial [was] merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. at 230. If the district court had in mind the jurisdictional issue that concerned us in Part II(B) of this opinion, it should have said so, and given plaintiff an opportunity to bring himself within the jurisdiction of the court.

### IV. CONCLUSION

For the foregoing reasons, we vacate both the district court's denial of plaintiff's Motion for Expedited Reconsideration and its denial of plaintiff's Motion for Summary Judgment. We affirm the denial of a temporary restraining order. We also remand the case to the district court with instructions to reinstate plaintiff's action and give him the opportunity to file a properly amended complaint. The federal diversity forum does not, however, have jurisdiction to give the injunctive relief sought by the plaintiff.

*So ordered.*

HARRY T. EDWARDS, Circuit Judge, concurring in part and dissenting in part:

I concur in Parts I, II–A and III of the majority opinion. I agree that federal diversity jurisdiction extends to the tort of "childnapping," that the District Court in this case had *in personam* jurisdiction over

*Id.* at 20 (emphasis added). *See also id.* at 71 (testimony of A. Miller, Pres. of Children's Rights, Inc. and supporter of bill) ("We do not want the Federal Government settling custody disputes."); *id.* at 133 (testimony of R. Coombs, Professor of Law); *Hearings on Parental Kidnapping Before the Subcommittee on Crime of the House Committee on the Judiciary,* 96th Cong., 2d Sess. 7 (testimony of Cong. C. Bennett, sponsor of bill).

Mrs. Bennett pursuant to the District of Columbia Long Arm Statute, and that the District Court abused its discretion when it refused to grant Mr. Bennett leave to amend his complaint to clarify the source of the court's *in personam* jurisdiction. I cannot agree, however, that Mr. Bennett is required to waive his claim for injunctive relief, based on the same alleged misdeeds as his claim for damages, in order to proceed in federal court. With all respect, I believe that the majority's distinction is supported neither by law nor by logic.

The majority correctly notes that federal courts generally lack "the power to *determine* the custody of children." (Emphasis added.) It simply does not follow from this premise, however, that a federal court is powerless to *enforce* an otherwise valid state custody decree in a diversity action. Enforcement of a valid and final state decree does not require a federal court to inquire into the present best interests of minor children; rather, the federal court need only give effect to the binding decision of a state court. Admittedly, a federal court may occasionally have to decide which of two conflicting state decrees is valid; but, as the majority concedes in its discussion of appellant's claim for damages, "the task of determining such validity and effect is ... not beyond the competence of the federal courts." [1]

The majority opinion also engenders an ironic result. Under the majority's analysis, Mr. Bennett properly may sue for the unlawful childnapping of his son Steven and, assuming that the facts stated in his complaint are true, Mr. Bennett may recover monetary damages. Presumably, if Mrs. Bennett does not return Steven and a period of time passes, Mr. Bennett may sue again for additional monetary damages arising from Mrs. Bennett's continued tortious conduct. At no time, however, could Mr. Bennett recover the lawful custody of Steven. In effect, under the decision we issue today, Mrs. Bennett may purchase the unlawful custody of Steven by tendering periodic payments to Mr. Bennett—much as one might rent an automobile or an apartment. [2]

The award of damages will provide Mr. Bennett little, if any, solace for the absence of his son. And assuming, as we must, that the District of Columbia Superior Court properly concluded that Steven's best interests will be served if he lives with his father, the majority's decision promises no relief at all to Steven. Finally, the majority's decision allows Mrs. Bennett to continue to flout the valid custody decree of the Superior Court. Thus, the majority is undoubtedly correct when it states that "[t]his case is profoundly sad."

For these reasons, I respectfully dissent from the majority's holding that Mr. Bennett must waive his claim for injunctive relief.

---

1. Nor can the majority's denial of injunctive relief be supported by a distinction between the federal courts' legal and equitable powers. Notably, the federal courts have exercised their equitable powers in the realm of domestic relations by requiring future payments of alimony, as well as requiring the payment of amounts already accrued. *E.g., Keating v. Keating,* 542 F.2d 910, 911 ·12 (4th Cir. 1976); *Harrison v.* *Harrison,* 214 F.2d 571, 573–74 (4th Cir.), *cert. denied,* 348 U.S. 896, 75 S.Ct. 217, 99 L.Ed. 704 (1954).

2. In this case, Mr. Bennett may be denied even the inadequate remedy of monetary damages if, as the record suggests, Mrs. Bennett is judgment-proof.