Edward Linn **HEARTFIELD**,
Plaintiff-Appellee,

v.

Sharon Mary **HEARTFIELD**,
Defendant-Appellant.

No. 83–2525.

United States Court of Appeals,
Fifth Circuit.

Jan. 7, 1985.

Garwood, Circuit Judge, filed concurring opinion.

Jerre S. Williams, Circuit Judge, filed dissenting opinion.

Michael D. Matheny, Beaumont, Tex., for defendant-appellant.

Orgain, Bell & Tucker, Gilbert I. Low, Everett B. Lord, Beaumont, Tex., for plaintiff-appellee.

Before POLITZ, WILLIAMS and GARWOOD, Circuit Judges.

PER CURIAM:

This case involves court orders regarding child support obligations and visitation rights under a divorce decree originally issued by the Texas court. The father, appellee Edward Heartfield, a resident of Texas, filed suit in the federal district court in Texas seeking an injunction restraining the mother, appellant Sharon Heartfield, now a resident of Louisiana, from litigating the child support and visitation issues in the Louisiana state court. The father was successful in obtaining the injunction, and the mother appeals. We reverse; a majority of the panel finding a lack of justification for the injunction because the Louisiana court has not yet acted in conflict with the Texas court.

## I. FACTS

Sharon and Edward Heartfield were divorced by the district court of Jefferson County, Texas, in 1979. Appellant Sharon Heartfield was made managing conservator of the couple's three minor children. The divorce decree required Edward to pay child support of $2,025 per month. After the divorce became final, Sharon and the three children moved to Louisiana where they have been residents for over four years. Edward continues to reside in Texas.

In June 1982, Sharon filed a complaint in the Jefferson County, Texas, district court requesting modification of child support. In response, Edward filed a cross-action seeking increased visitation, a reduction in child support payments, and a motion to transfer the case to Hardin County, Texas.

The case was transferred to the Hardin County district court pursuant to Edward's motion.

Sharon then petitioned the civil district court of Orleans Parish, Louisiana, to make the original Texas judgment executory. The Louisiana court made the Texas judgment executory by order entered November 17, 1982. Sharon then filed a motion in the Hardin County court to have the action dismissed or transferred to Orleans Parish. This motion was denied on January 20, 1983. Approximately one month later, on February 22, 1983, the Hardin County district court, after a trial, modified the original divorce decree by reducing Edward's child support payments to $1,800 a month. The court's judgment also made the payment of child support contingent upon specific visitation rights.

On April 6 and 27, 1983, Edward filed affidavits in the district court of Hardin County, alleging that visitation had been denied and that child support payments therefore were being withheld. Meanwhile, Sharon filed a motion in the Louisiana state court seeking to hold Edward in contempt of court for failing to pay child support under the original Texas divorce decree, although the decree had been modified by the Hardin County district court.

Since conflicting positions were being taken by litigants in the Louisiana and Texas courts, Edward filed a motion for a temporary injunction in the United States District Court for the Eastern District of Texas, Beaumont Division, seeking to restrain Sharon from proceeding on her claims in the Louisiana state court. After the initial hearing in federal court, Sharon dropped her Louisiana state court claims regarding child support and to hold appellee in contempt of court. She limited her claim to that of visitation, alleging that the visitation plan as it exists is unworkable and a threat to the well-being of the children.

On July 1, 1983, the federal district court granted a temporary injunction prohibiting Sharon, the appellant, from continuing her

litigation in the Louisiana state court. On appeal, appellant presents two grounds of error:

(1) that the district court erred in exercising jurisdiction in this matter;

(2) that the district court abused its discretion and committed reversible error in issuing a temporary injunction restraining appellant from litigating her claim in Louisiana state court.

We address each contention in turn.

## II. JURISDICTION

Appellee Edward Heartfield maintains that the district court had two separate bases of jurisdiction:

(1) Federal question jurisdiction under 28 U.S.C. § 1331 based upon the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A.

(2) Diversity of citizenship and amount in controversy jurisdiction under 28 U.S.C. § 1332.

In order to decide whether the district court had federal question jurisdiction under § 1331, we must first determine whether federal district courts have jurisdiction to enforce compliance with the provisions of the PKPA. This is a question of first impression in this circuit.

In *Flood v. Braaten*, 727 F.2d 303 (3rd Cir.1984), the Court of Appeals for the Third Circuit answered this question in the affirmative. In *Braaten*, the federal court was faced with a situation where a New Jersey state court had awarded custody of children to the mother, while a North Dakota state court had awarded custody to the father. Each court refused to enforce the custody decree of the other. The mother brought an action in the United States District Court to enforce the New Jersey custody decree. The district court dismissed the complaint for want of jurisdiction. In

vacating the district court's order of dismissal, the circuit court acknowledged that the federal courts have traditionally avoided involvement in child custody disputes in matters brought to federal court under diversity jurisdiction. The court concluded, however, that the general rule of abstention in custody matters does not foreclose a federal court from exercising its power to enforce compliance with 28 U.S.C. § 1738A, the PKPA.

■ The PKPA is entitled "Full faith and credit given to child custody determinations." [1] The Act provides:

(a) The appropriate authorities of every State shall enforce according to its terms ... any child custody determination made consistently with the provisions of this section by a court of another state.

\*　　\*　　\*　　\*　　\*　　\*

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

The Act imposes a duty upon the state courts to enforce child custody determinations which have been made by another state in accordance with the terms of § 1738A. The Act, at the same time, gives a parent a right to have a valid custody determination made by one state enforced in other states. As the *Braaten* court pointed out, this right would be substantially abridged if no means existed for forcing a noncomplying state to abide by the terms of the Act.

1. "Custody determination" is defined by the Act as "a judgment, decree, or other order of a court providing for the custody or visitation of a child." 28 U.S.C. § 1738A(b)(3). Hence, the PKPA is applicable to the instant case involving visitation. The Act does not specifically address child support. In this case, the modified order issued by the Texas court makes child support contingent upon visitation. Because the visitation and child support provisions are so closely intertwined, we conclude that in this instance the PKPA applies to both provisions, or in any event, the child support issue is a matter of pendent jurisdiction. 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3567.

In the case at bar, both the Texas court and the Louisiana court asserted jurisdiction over the child support and visitation provisions of the original decree. The Texas court reduced the original child support payments to $1,800 per month and made Edward's duty to pay child support contingent upon Sharon's compliance with the visitation provision. The Louisiana court, meanwhile, had made executory the original Texas judgment, which provided for child support of $2,025 per month. Sharon had filed in the Louisiana state court seeking to hold Edward in contempt of court for failing to pay child support under the original Texas divorce decree, although the decree had been modified by the Texas court. We emphasize, however, that the Louisiana court had not acted upon Sharon's motion.

When the courts of two states assert that they have jurisdiction over a custody determination, it is clear that Congress' purpose in enacting the Act would be thwarted without some means of determining which state has the right to exercise its jurisdiction under the terms of the Act. We agree with the *Braaten* court that Congress could not have "intended to render § 1738A virtually nugatory by so restricting the availability of a federal forum that state compliance with the legislation would become optional." 727 F.2d at 312.

█ Hence, we conclude that in situations such as this, where courts of two different states assert jurisdiction over a custody determination, federal district court intervention is proper and in fact necessary to enforce compliance with § 1738A. The district court was correct in exercising federal question jurisdiction.

Because we decide that the district court had federal question jurisdiction based upon the PKPA, we need not decide whether the court also had diversity jurisdiction over this matter.

## III. CONTINUING JURISDICTION IN TEXAS

Having concluded that the district court properly had jurisdiction under the PKPA to resolve the dispute stemming from the conflicting orders issued by the Texas and Louisiana state courts, we must next decide whether the district court was correct in holding that the Texas court has continuing jurisdiction over the visitation and child support provisions of the divorce decree.

The operative provisions of the PKPA dictate when a state may enforce or modify its own decrees and when a state may modify or must enforce the decrees of another state. Subsection (c) of the Act sets out requirements as to when a state may make the initial custody determination. There is no allegation that Texas did not have jurisdiction to make the initial custody determination at the time the parties were divorced.

We are concerned here with subsection (d), which determines when a state court which has made a child custody determination consistent with the Act continues to have jurisdiction over the order. This subsection provides that a State has continuing jurisdiction "as long as [1] the requirement of subsection (c)(1) of this section continues to be met *and* [2] such State remains the residence of the child *or of any contestant.*" (Emphasis added.)

We dispose of the second requirement briefly. The parties do not dispute that Edward Heartfield has been a resident of Texas since the original divorce decree and child custody determination was rendered in May 1979. Thus, the Texas court has met the second requirement of the continuing jurisdiction test.

█ The first requirement is that Texas continues to meet the provisions of subsection (c)(1) of the Act. Subsection (c)(1) requires that Texas have continuing jurisdiction over the custody determination under its own laws. We look therefore to the Texas Family Code in order to determine whether Texas has continuing jurisdiction over the visitation and child support provisions of the decree.

Section 11.05 of the Texas Family Code, entitled "Continuing Jurisdiction," determines when the courts of Texas will have

continuing jurisdiction over suits affecting the parent-child relationship. Subsection (g) contains the essential proscriptions against continuing jurisdiction. It states that a Texas court *"may not* exercise its continuing jurisdiction to modify any part of a decree if the child and all parties have established and continue to maintain their principal residence or home state outside [Texas]." Since Edward Heartfield is a resident of Texas, this part of subsection (g) does not prohibit Texas from continuing to have jurisdiction.

The only other proscription against continuing jurisdiction in subsection (g) is found in the reference to "Subsection (d)" in the following: "Except as provided by Subsection (d) of Section 11.53 of this code, a court may exercise its continuing, exclusive jurisdiction to modify all aspects of its decree, including managing conservatorship, possessory conservatorship, possession of and access to the child and support of the child." Thus, under § 11.05(g), Texas has continuing jurisdiction as to all aspects of its decree unless prohibited by subsection (d) of § 11.53.

Section 11.53(d) provides:

Except on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify custody if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired.

In determining the scope of the exception to continuing jurisdiction contained in § 11.53(d), it is of controlling importance that "custody" is defined by the Code as "managing conservatorship of a child," § 11.52(10), whereas "visitation" is defined as "possession of or access to a child," § 11.52(11).

In view of the facts that "custody" and "visitation" are separately defined and that visitation is not included in the § 11.53(d) exception, we must conclude that the Texas legislature intended that the exception to continuing jurisdiction contained in § 11.-53(d) encompass only modifications in managing conservatorship. Had the Texas legislature intended visitation to be included in the § 11.53(d) exception, the legislature should have used the term "custody determination" which is defined in § 11.52(2) as "a court decision and court orders and instructions providing for the custody of a child, including *visitation rights."* (Emphasis added.) The conclusion logically follows that a Texas court is prohibited by § 11.53(d) from changing child custody (managing conservatorship) if the child and the parent with custody live outside Texas. "[A]ll [other] aspects of its decree, including ... possessory conservatorship, *possession of and access to the child* [i.e., visitation] and *support of the child"* remain under the exclusive jurisdiction of the Texas court as provided by § 11.05(g). (Emphasis added.)

An analysis of §§ 11.05(g) and 11.53(d) of the Texas Family Code clearly shows that the Texas legislature intended that changes in managing conservatorship be treated differently with regard to continuing jurisdiction from changes in child support obligations or visitation rights. The legislation prohibits the Texas court from exercising continuing jurisdiction to change child custody long after the custodian and child have acquired a new "home state." Tex. Fam.C. § 11.52(5). However, the " 'left-behind parent' is ... assured of access to the Texas court for modification of visitation and of the child support obligation." Sampson and Tindall, *The UCCJA Comes to Texas—As Amended, Integrated and Improved,* 46 Tex.B.J. 1096, 1103 (1983).[2]

**2.** Sections 11.05(g) and 11.53(d) of the Texas Family Code became effective September 1, 1983. Acts 1983 68th Leg. ch. 160. These sections were enacted pursuant to Texas' adoption of the Uniform Child Custody Jurisdiction Act (UCCJA) Tex.Fam.Code §§ 11.51–11.75. Because these two provisions represent new legislation, no Texas cases have yet interpreted them

as to the issue in this case. The statutory construction applied in the text conforms to that given by Professor John J. Sampson, the principal draftsman of the Texas UCCJA and §§ 11.-05(g) and 11.53(d). *See* Sampson and Tindall, *"The UCCJA Comes to Texas—As Amended, Integrated and Improved,"* 46 Tex.B.J. 1096 (1983).

■ Having established that Texas has continuing jurisdiction, regardless of the residence of the parent with custody, over modification of visitation and child support obligations, we find it important to recognize as a practical matter that such jurisdiction would not bar an emergency need to protect the child requiring an immediate court order in the state of the child's physical presence. We pretermit the question of whether the PKPA would permit Louisiana, as the child's home state, to make temporary emergency orders regarding visitation for such protection. We are not presented with such an emergency situation in this case. We conclude only that under the terms of the PKPA and the Texas Family Code, Texas has the exclusive jurisdiction to issue visitation and child support orders in the regular course of determining such rights as the issue is presented in the case at bar.

## IV. THE INJUNCTION AGAINST THE CLAIM IN THE LOUISIANA COURT

■ The status of the claim made by appellant, Sharon Heartfield, in the Louisiana state court is a challenge to the visitation orders issued by the Texas court. A majority of the panel concludes that the district court was in error in issuing a temporary injunction against Sharon pursuing her claim in the Louisiana court on the ground that a true impasse situation has not occurred which would justify the exercise of jurisdiction directed against specific Louisiana court activity.

The facts of this case are in contrast to such cases as *Flood v. Braaten, supra,* 727 F.2d 303 (3rd Cir.1984). In that case each state had specifically ruled that it had jurisdiction and each party had been held in contempt. The courts of the two states had each "concurrently issued conflicting custody decrees." In this case the Louisiana court has not ruled on Sharon's motion concerning visitation rights. A confrontation between the courts of Texas and Louisiana has not yet occurred. Until it does, the exercise of the power to enjoin Sharon Heartfield from pursuing her claim in the Louisiana court is premature. There was a lack of jurisdiction to issue the preliminary injunction.

The federal court should not assume that a state court will make an improper decision by enjoining a movant from undertaking to get the court to do so. In the delicate and critical relationships which exist between the courts of different states, each of which obviously has jurisdiction over some aspects of the particular controversy, the federal court should not exercise its otherwise proper jurisdiction to enjoin a party to the dispute from undertaking to create a jurisdictional conflict which may never occur. The federal jurisdiction under PKPA, as we have outlined it above, does not require a vindication until the impasse between the state courts has actually been reached. Lacking 'such an impasse in this case, the court had no authority to enjoin Sharon Heartfield from pursuing her motion concerning visitation rights in the Louisiana state court until such time as the Louisiana court made a decision which was in violation of the valid orders of the Texas state court. Only then does the jurisdiction to enjoin arise. It follows that the issuance of the temporary injunction by the district court was in error and must be reversed.

REVERSED.

GARWOOD, Circuit Judge, concurring.

I join in the "Continuing Jurisdiction in Texas" portion of the Court's opinion and in the holding there made that under the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, and the Texas Family Code, the Texas court had continuing exclusive jurisdiction to modify, or refuse to modify, the visitation provisions of the Texas divorce decree, subject to presently inapplicable possible exceptions for emergency orders. This ruling requires the Court to determine whether by virtue of the PKPA the district court had jurisdiction to enjoin continuation of the previously commenced proceedings in the Louisiana court, there being no impasse such as that present in *Flood v. Braaten,* 727 F.2d 303

(3d Cir.1984).* I agree with the Court's holding on this question and hence with its judgment of reversal. I would not reach the question of what the district court's powers would be in a *Flood* -type impasse, and hence do not join in the "Jurisdiction" portion of the Court's opinion. *See Hazen Research, Inc. v. Omega Minerals, Inc.,* 497 F.2d 151, 153 n. 1 (5th Cir.1974); 28 U.S.C. § 2283; Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3563 at 50; *id.* § 4222 at 317 & n. 14.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

I am in agreement with all aspects of the majority opinion except part IV which concludes that the district court improperly undertook to enjoin Sharon Heartfield from pursuing her custody claims in the Louisiana state court. I concede that there has been no direct impasse since the Louisiana court has not yet ruled upon her claim. But to me it is clear that the majority of the court thwarts the purpose of both the policy behind and provisions of the PKPA by denying the validity of the injunction in this case.

First, I stress the fact that the Louisiana court is not in any way enjoined. The injunction runs only against one of the parties to this dispute, a dispute which is of the kind which led to the passage of the PKPA. Nothing in the injunction in any way reflects upon or attempts to interfere with any decision of the Louisiana court.

Second, what is critical to me is the fact that Edward Heartfield is compelled by the majority of this court to go to the time, difficulty, and expense of litigating child visitation rights in a Louisiana state court even though under the law the Louisiana court has no jurisdiction. I assume that the Louisiana court would so hold. But in the meantime the expense is present. The delay is present. The unsettling nature of the continuing litigation to the well-being of the child and both parents would continue. The confrontation and impasse is complete as far as the parents are concerned, and I can see no reason why the courts should not enjoin one of the parents from doing something that she has no right to do to avoid the useless litigation in Louisiana.

It seems to me that a major purpose of PKPA was to avoid just this kind of continuing expense, distraction, and unsettling activity which is occasioned because the parties to such a dispute claim jurisdiction in different states. There is no question but that Sharon is claiming that the Louisiana courts have jurisdiction of this dispute. There is no question on the facts of this dispute that her claim is not valid. I cannot see why we must allow her to pursue it under these circumstances instead of enjoining her unsettling activities. I would affirm the decision of the district court in full.

---

* Except as the PKPA may be read to modify the "domestic relations" exception to federal court jurisdiction, *see Bennett v. Bennett,* 682 F.2d 1039, 1042–44 (D.C.Cir.1982); *Crouch v. Crouch,* 566 F.2d 486 (5th Cir.1978), and to bring the case within one of the exceptions to 28 U.S.C. § 2283, the diverse citizenship of the parties did not suffice to empower the court below to enjoin the Louisiana proceedings.