**Ellen M. ELLISON, Plaintiff,**

v.

**Marvin P. SADUR, Defendant.**

**Civ. A. No. 87–3517(RCL).**

United States District Court,
District of Columbia.

Oct. 25, 1988.

Leonard C. Greenebaum, Harlan L. Weiss, Sachs, Greenebaum & Taylor, Washington, D.C., for plaintiff.

Marvin P. Sadur, Washington, D.C., pro se.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on defendant's motion to dismiss the action, and on plaintiff's opposition to defendant's motion. Plaintiff, moreover, has moved that defendant be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure.

In her complaint, plaintiff represents that she is a citizen and resident of the State of Maryland and that defendant is a citizen and resident of the District of Columbia. The plaintiff asks the Court to enforce a separation and property settlement agreement, as amended on April 14, 1979, entered into between she and the defendant. The plaintiff also represents in her Complaint that judgment has been entered in her favor by the Superior Court of the District of Columbia pursuant to a suit which she brought before that court involving the interpretation of the separation and property settlement agreement at issue in this case. Plaintiff states, however, that she may not at this point enforce this judgment because defendant has appealed.

*Jurisdiction*

Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction to hear, *inter alia*, "all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a). As previously stated, the parties are of diverse citizenship. The amount in controversy, moreover, exceeds the $10,000 requirement.[1] There are, however, some limited circumstances in which federal courts generally will not accept jurisdiction over a case because of its subject-matter, even if the case would normally fall within its diversity jurisdiction. One such exception, the domestic relations exception,[2] is relevant to the dis-

---

1. In Count I of her complaint, plaintiff demands $6,511 plus interest, in Count II she demands $7,232 plus interest, in Count III she demands $8,050.20 plus interest, and in Count IV she demands $3,953.22 plus interest. In Count V, she demands counsel fees, costs, and expenses. [Plaintiff's] complaint, December 28, 1987.

2. The domestic relations exception was originally enunciated by the United States Supreme Court in *Barber v. Barber,* 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858). The Court in that case stated in dictum that "[w]e disclaim altogether any jurisdiction in the Courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce *a vinculo,* or to one from bed and board." 62 U.S. (21 How.) at 584. See also *Spindel v.*

position of this case. Federal courts generally will not accept jurisdiction over a case that involves the resolution of a marital dispute, such as a case concerning divorce or child custody. *See* 13B L. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure § 3609 (1984). This exception is largely grounded in the belief that state courts have a particularly strong interest and have developed special competence in resolving disputes involving family relationships. *Id.* § 3609, at 461.

As is often the case, the domestic relations exception is clear at its core, but often ambiguous and troublesome at its periphery. *See, e.g., Fern v. Turman,* 736 F.2d 1367, 1370 (9th Cir.1984), *cert. denied,* 469 U.S. 1210, 105 S.Ct. 1177, 84 L.Ed.2d 326 (1985). It is clear, for example, that a federal district court will not accept jurisdiction over a case that directly involves the reordering of a marital relationship, for it is in such a case that a state's special interest and special competence are most compelling and apparent. *See, e.g., Cole v. Cole,* 633 F.2d 1083, 1087 (4th Cir.1980) ("district courts have no original diversity jurisdiction to grant a divorce, to award alimony, to determine child custody, or to decree visitation"). On the other hand it is also settled that a federal court "may not simply avoid all diversity cases having intrafamily aspects." *Cole,* 633 F.2d at 1088. A federal court, for example, may in some cases accept jurisdiction over a simple contract action to enforce the terms of the contractual resolution of a prior marital dispute. *See Crouch v. Crouch,* 566 F.2d 486, 487–88 (5th Cir.1978) (accepting jurisdiction in suit to enforce voluntary separation agreement); *see also Bennett v. Bennett,* 682 F.2d 1039, 1044 (D.C.Cir.1982).

Resolution of the case before this Court would be easy if the scope of the domestic relations exception depended merely on whether it involved resolving a marital dispute on the one hand or enforcing the terms of its resolution on the other. · As other courts have recognized, however, the obtaining of a divorce decree or settlement agreement does not relieve the district court of its obligation "to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated." *Firestone v. Cleveland Trust, Co.,* 654 F.2d 1212, 1216 (6th Cir.1981). Some such cases which on the surface appear to be simple contract or tort actions are nonetheless sufficiently "on the verge" of the core of the exception that a federal court should decline jurisdiction. *Bossom v. Bossom,* 551 F.2d 474, 475 (2nd Cir.1976). In other words, some cases are so strongly intertwined with domestic relations matters —though they may relate only indirectly to such matters—that a federal court should not hear it on its merits.

There is unfortunately no objectively ascertainable formula to apply in determining which cases are sufficiently "on the verge" of the core of the domestic relations exception to be considered to be within its scope. The District of Columbia Circuit, and other circuits, have provided some guidance, however. In *Bennett v. Bennett,* 682 F.2d 1039 (D.C.Cir.1982) the District of Columbia Circuit accepted jurisdiction to hear a tort action for monetary damages in a suit involving enforcement of a child custody decree. In that case, the defendant (plaintiff's former wife) removed two children from plaintiff's home by force while plaintiff had legal custody of them pursuant to a decree of the Superior Court of the District of Columbia. In his complaint plaintiff asked for monetary relief and an injunction enjoining the defendant from interfering with his custody rights. Addressing whether plaintiff's claims should fall within the scope of the domestic relations exception, the court found that defendant could maintain his action for monetary damages, reasoning that the court is competent to decide "traditional tort issues." *Bennett,* 682 F.2d at 1042. Further, it reasoned that "[a]lthough the existence of a legal duty in this case may depend in whole or in part on the validity and effect of the various state court decrees

*Spindel,* 283 F.Supp. 797, 799–810 (E.D.N.Y. 1968) for a discussion of the historical development of the domestic relations exception.

... the task of determining such validity and effect is also not beyond the competence of the federal courts." *Bennett*, 682 F.2d at 1042. The court, however, declined to hear plaintiff's prayer for injunctive relief. It explained that such relief would depend not merely on "the past rights and wrongs of the parties ... [but would] require an inquiry into the present interests of the [two] children...." *Bennett*, 682 F.2d at 1042–43. Thus, the District of Columbia Circuit is willing to address domestic relations questions so long as they are secondary to the central issue of the case and so long as the court's decision would not affect the present or future relationship between the parties.

Other courts have also provided some guidance. In *Solomon v. Solomon*, 516 F.2d 1018 (3rd Cir.1975), the Third Circuit declined to hear a suit involving the interpretation of a separation agreement. The court in that case was asked to determine whether the plaintiff's denial of the defendant's visitation rights represented a prior material breach of the agreement. *Solomon*, 516 F.2d at 1026. In determining that the case fell within the domestic relations exception, the court focused on the fact that there was a pending state court action, an agreement to litigate in state courts, and a possibility that the parties were attempting to play one court against the other. *Solomon*, 516 F.2d at 1025. It also concluded that, although the case involved primarily the interpretation of a contract, even such a straightforward interpretation would require inevitably "a consideration of a dispute as to visitation rights." *Solomon*, 516 F.2d at 1027.

In a similar case involving the interpretation of a property settlement agreement, the Sixth Circuit declined jurisdiction after considering many of the factors discussed in *Solomon*. In that case, *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212 (6th Cir.1981), the court focused primarily on the existence of a pending state proceeding as well as on the fact that the court would be required to determine "the past, present, and future duties and obligations of [the defendant] under the settlement agreement." *Firestone*, 654 F.2d at 1217.

In *Bossom v. Bossom*, 551 F.2d 474 (2nd Cir.1976), the Second Circuit, in a case involving interpretation of a stipulation and escrow agreement incorporated into a divorce decree, also declined jurisdiction. Plaintiff requested that the court declare invalid a provision in the stipulation providing for the forfeiture of his visitation rights and interest in the marital home. *Bossom*, 551 F.2d at 475. In concluding that the case fell within the domestic relations exception, the court reasoned that "[e]ven a declaration of invalidity limited to the provision in the stipulation calling for forfeiture of [plaintiff's] visitation rights ... would seem to involve a sufficient meddling with the judgment of divorce to bring the case within the matrimonial exception itself...." *Bossom*, 551 F.2d at 475. In *Fern v. Turman*, 736 F.2d 1367 (9th Cir. 1984), *cert. denied*, 469 U.S. 1210, 105 S.Ct. 1177, 84 L.Ed.2d 326 (1985). The Ninth Circuit declined jurisdiction in a case in which appellants asked the court to invalidate a term of their divorce decree. In declining jurisdiction the court focused on the possibility of piecemeal and duplicative litigation, the potential for inconsistent state and federal decrees, as well as the possibility that any decision by the court "would likely require the state courts to determine whether compensating alterations in the decree, such as the addition or alterations of support terms, are necessary." *Fern*, 736 F.2d at 1370. The approaches adopted by other courts are consistent with these cases. *See, e.g., Lloyd v. Loeffler*, 694 F.2d 489 (7th Cir.1982); *Sutter v. Pitts*, 639 F.2d 842 (1st Cir.1981); *Fusaro v. Fusaro*, 550 F.Supp. 1260 (E.D. Pa.1982); *Lewis v. Lewis*, 543 F.Supp. 35 (M.D.Pa.1981); *Smith v. Smith*, 559 F.Supp. 107 (S.D.Ohio 1982); *Allen v. Allen*, 518 F.Supp. 1234 (E.D.Pa.1981).

In the case at bar, plaintiff prays for monetary damages flowing from defendant's alleged breach of their separation and property settlement agreement. In her complaint, she represents that a legal dispute concerning the method of calculating the defendant's payments to her pursuant to that agreement was resolved in her fa-

vor by the Superior Court of the District of Columbia.[3] [Plaintiff's] Complaint, Dec. 28, 1987, at 3. However, she further represents that defendant has appealed that judgment so that she may not enforce the judgment at this time.

Although this case falls within the periphery of the domestic relations exception rather than its core, this court finds that the considerations discussed by the other courts addressing this issue weigh in favor of dismissing this case for lack of jurisdiction. It is true that the plaintiff appears to ask the court to enforce rather than interpret the separation agreement at issue; however, since the defendant's appeal in the District of Columbia Court of Appeals is still pending, domestic relations issues associated with both the interpretation of the contract and any possible "compensating alterations" may still be addressed by the Court of Appeals or by the Superior Court on remand. To enforce the agreement as it is currently interpreted by the Superior Court, accordingly, would amount to adoption of a particular interpretation which the District of Columbia courts may not ultimately find acceptable. Furthermore, considerations of comity are extremely compelling here since not only is there a pending action in the District of Columbia courts, but that pending action is near resolution.[4] These concerns of comity are amplified by the fact that the plaintiff in this case may be trying to play one court system against another.[5] Finally, there is a real possibility that this court and the District of Columbia courts will render inconsistent decrees if the Superior Court's decision is modified or reversed on appeal.

This conclusion is buttressed by consideration of another line of cases which holds that a federal court may not accept jurisdiction to enforce a judgment obtained in a domestic relations case unless that judgment is final and not subject to modification. *See, e.g., Sistare v. Sistare,* 218 U.S. 1, 16–17, 30 S.Ct. 682, 686, 54 L.Ed. 905 (1910); *Morris v. Morris,* 273 F.2d 678 (7th Cir.1960); *see generally* 13B L. Wright, A. Miller & E. Cooper, *supra* § 3609, at 476–77. "Finality" in this context normally refers to whether or not the lower state court's decision is subject to ongoing modification by that same lower court. The rationale for this rule is that federal courts should not interfere with ongoing state proceedings. L. Wright, A. Miller & E. Cooper, *supra* § 3609, at 477. This same concern is present here since the judgment by the Superior Court is not final but rather open and ongoing until the defendant's appeal in the District of Columbia Court system is resolved. This line of cases, therefore, also suggests that the court should not accept jurisdiction over this case.

The *Bennett* decision rendered by the District of Columbia Circuit does not require a contrary result in this case. The *Bennett* court accepted jurisdiction over a tort claim for damages flowing from the alleged breach of a child custody decree. The court determined that it was competent to resolve the case since it involved primarily traditional tort issues, even though it may eventually be confronted with interpreting the child custody decree in order to resolve the primary issues. However, there is an important distinction between a tort case which clearly addresses only past wrongs growing out of the past relationship between the parties and the interpretation of a separation agreement or the like which inevitably affects the present and future conduct between the parties. It is because it would affect the future conduct of the parties that the *Bennett* court declined to accept jurisdiction over plaintiff's request for an injunction and only addressed the claims for mon-

---

**3.** The Superior Court action is styled *Ellen M. Ellison v. Marvin P. Sadur* (Docket No: D–1923–83). The details of this dispute are not in the court's record. Nor did the parties provide the court with a copy of the Superior Court's judgment.

**4.** Indeed, even if this court accepted jurisdiction over this case, it would very likely stay action pending resolution of the appeal in the District of Columbia courts.

**5.** The only apparent reason to request a federal court to enforce a lower state court decision which is still on appeal is to attempt to circumvent the state appeals process. Plaintiff has not provided this court with evidence of a different motive.

etary damages. *See Bennett*, 682 F.2d at 1043–44. Since enforcement of the separation agreement at issue in this case as it has recently been interpreted by the Superior Court would affect the present and future relationship between the parties, *Bennett* does not require a different result in this case, but rather supports the Court's conclusion that it lacks jurisdiction. The *Bennett* case finally, did not implicate concerns of comity to the extent that they are implicated in this case.

In consideration of the foregoing as well as the entire record herein, the defendant's motion to dismiss will be GRANTED, and the plaintiff's motion for Rule 11 sanctions will be DENIED.