**Linda Joleen DAVIS, Plaintiff,**

v.

**Tracy James DAVIS, Defendant.**

No. 85C9226.

United States District Court,
N.D. Illinois, E.D.

June 25, 1986.

Howard Rubin, Ann Dickerson, Susan Diaz, DePaul Legal Clinic, Chicago, Ill., for plaintiff.

Paris D. Getty, Kelly S. Rask, Getty Law Office, Forest Lake, Minn., Marcia B. Gevers, Nanette Raduenz, Getty & Gevers, Dolton, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Linda Joleen Davis ("Linda") has sued her ex-husband Tracy James Davis ("Tracy") under the Parental Kidnapping Pre-

vention Act ("PKPA"), 28 U.S.C. § 1738A ("Section 1738A"), seeking a declaration that PKPA entitles her Illinois child-custody decree to full faith and credit in other States' courts. In turn Tracy has counterclaimed on two grounds:

 1. His Minnesota child-custody decree is entitled to enforcement.

 2. If PKPA does prevent enforcement of the Minnesota decree, it violates the Tenth Amendment.

Linda has now moved (1) to dismiss the counterclaims under Fed.R.Civ.P. ("Rule") 12(b)(6) and (2) for judgment on the pleadings under Rule 12(c). Both parties have however submitted "matters outside the pleadings," thus rendering Linda's motions appropriate for consolidated summary-judgment treatment (see the concluding sentences of Rules 12(b) and (c) respectively).[1] So treated, Linda's motion is granted.

### Facts [2]

Linda and Tracy were married in Minnesota October 29, 1981 (¶ 6). Linda left Minnesota November 30, 1983 and took up residence in Illinois (¶ 7). She was then about six months pregnant (see ¶ 10).

On January 27, 1984 Linda filed a Petition for Dissolution of Marriage in the Circuit Court of Cook County, Illinois (the "Circuit Court") (¶ 8). Linda gave birth to Glory Ann Davis ("Glory") February 19, 1984 (¶ 10). On May 14, 1984 the Circuit Court dismissed Linda's petition for want of prosecution (Linda Mem.Ex. [B][3]). Ten days later Tracy filed his own dissolution petition in the District Court Family Division of Olmsted County, Minnesota (the "Family Division") (¶¶ 12, 14).

On August 21, 1984 the Circuit Court vacated its dismissal of Linda's petition, reinstating the action nunc pro tunc (Linda Mem.Ex. [C]). Linda's petition was granted March 4, 1985 in a decree (the "Illinois Decree") (*id.* Ex. [A]) that gave her custody of Glory. On May 6, 1985 the Family Division (in the "Minnesota Decree") granted Tracy's petition and awarded him custody of Glory (¶ 14). Tracy has now expressed the intent to take custody of Glory pursuant to the Minnesota Decree (¶ 19).

### PKPA Analysis

Linda and Tracy really pose the classic dispute Congress targeted in PKPA. Among its stated purposes were to (PKPA § 7(c)(5) and (6), Pub.L. No. 96–611, 94 Stat. 3569 (1980)):

> (5) avoid jurisdictional competition and conflict between State courts in matters of child custody and visitation which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being; and

> (6) deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards.

Section 1738A (as its Title 28 numbering suggests) is written in full-faith-and-credit terms and is addressed to State authorities (Section 1738A(a)):

> The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made

---

**1.** Technically Rule 56 (made applicable by Rules 12(b) and 12(c)) calls for a timetable for the submission of opposing materials by Tracy, then a hearing date. In this instance *both* parties have tendered materials, revealing no controverted facts—purely questions of law. Under those circumstances it is plainly appropriate to proceed now, without setting any extended schedule.

**2.** Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact (a proposition most recently repeated in *McGraw-Edison Co. v. Walt Disney Productions,*

787 F.2d 1163, 1167 (7th Cir.1986)). For that purpose this Court must view the evidence in the light most favorable to the nonmovant—in this case Tracy. *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985). As n. 1 indicates, here there are no disputed material facts. Citations to the Complaint will simply taken the form "¶ —."

**3.** None of the exhibits attached to Linda's Rule 12(c) motion is labeled. For convenience this opinion refers to them as [A], [B] and [C] in the order submitted.

consistently with the provisions of this section by a court of another State. Section 1738A(c) then goes on to define such consistency:

A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the

more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

■ Thus PKPA's scheme (1) establishes a means of identifying which State's child-custody decree takes precedence over other competing decrees and (2) directs all other States' authorities to give full faith and credit to that decree. Though that does not on its face create a federal cause of action to enforce child custody decrees, every Court of Appeals that has considered the issue has held actions invoking PKPA to declare parents' rights "arise under" that statute within the meaning of the federal-question jurisdictional statute, 28 U.S.C. § 1331: *McDougald v. Jenson*, 786 F.2d 1465, 1476–81 (11th Cir.1986); *Heartfield v. Heartfield*, 749 F.2d 1138, 1140–41 (5th Cir.1985); *Flood v. Braaten*, 727 F.2d 303, 312 (3d Cir.1984). This Court agrees.[4]

That jurisdictional conclusion follows from the fact that declaratory and injunctive actions pitched on PKPA necessarily involve interpretation of PKPA's "detailed federal standards" for enforcement priority (*McDougald*, 786 F.2d at 1480). Under those standards, the entitlement of a State child-custody decree to full faith and credit depends on two factors:

1. whether the rendering court had jurisdiction to enter the decree under its own State's law (Section 1738A(c)(1)) and

2. whether the decree meets at least one of the five statutory conditions set out in Section 1738A(c)(2).

■ Tracy attacks the first factor, claiming the Circuit Court had no jurisdiction under Illinois law to enter the Illinois decree. Linda commenced her Illinois action only 58 days after she moved to Illinois. Ill.Rev.Stat. ch. 40, ¶ 401(a) ("Section 401(a)"[5]) provides:

---

4. Though parties cannot of course confer subject matter jurisdiction on this Court by agreement, Tracy also does not contest jurisdiction here.

5. In the past few years Illinois statutory provisions have developed a disparity in presentation, with the legislative enactments themselves retaining section ("§") designations and the stat-

The court shall enter a judgment of dissolution of marriage if at the time the action was commenced, one of the spouses was a resident of this State ... and the residence ... had been maintained for 90 days next preceding the commencement of the action or the making of the finding....

Linda had certainly not been an Illinois resident for 90 days when she filed her petition. But just as certainly she had been an Illinois resident for much more than 90 days by the time the Illinois decree was entered.

Tracy seeks to deflect the conclusive impact of that period of residence by arguing the statute does not mean what it says on its face. Unable to find any case support for that odd proposition, Tracy says the absence of reported cases construing Section 401(a) casts its meaning into doubt.

But Tracy is all wrong. Section 401(a)'s 90–days–before–*judgment* provision has long been a part of the statute. Indeed, for many years the *only* Illinois jurisdictional requirement was residence here for 90 days before entry of the decree. Only in 1983 did the General Assembly amend Section 401(a) to add the 90–days–before–*filing* alternative (see Section 401(a), Supplement to Historical and Practice Notes, Ill.Ann.Stat. ch. 40, ¶ 401 (Smith-Hurd 1985 pocket part)). Thus a 90–day period of residence before entry of the decree is well-established as sufficient to support Illinois jurisdiction (*In re Marriage of Weiss*, 87

Ill.App.3d 643, 648–49, 42 Ill.Dec. 714, 719, 409 N.E.2d 329, 334 (1st Dist.1980) ).[6]

■ Hence Illinois unquestionably had jurisdiction over Linda's petition. That leaves consideration of the Section 1738A(c)(2) conditions. And it takes only a brief look at the first of those conditions to see the Illinois Decree (and not the Minnesota Decree) is entitled to full faith and credit.[7]

Section 1738A(c)(2)(A)(i) clearly describes Illinois: It was Glory's "home State" when the Illinois proceeding was begun. That really ends the discussion, for the intended design of PKPA is to establish the *one* state that can act consistently with its provisions (*McDougald*, 786 F.2d at 1476). Once a decree anywhere fits those provisions, Section 1738A(a) confers absolute full-faith-and-credit status on that decree (a kind of "first in time, first in right" principle[8]). It becomes wholly irrelevant that another State might perhaps fit the statutory criteria too with a later-entered decree, because that later decree would be a nullity in the face of Section 1738A(a).

Even so, it may be worth a brief runthrough of the Section 1738A(c)(2) alternatives in terms of the Minnesota Decree. Analysis shows that decree could fit none of the conditions in any event:

1. Subsection (A) does not describe Minnesota, for that State was neither Glory's home State when the Minnesota proceeding began nor had it been such

---

utory compilations adopting paragraph ("¶") numbering. Whenever this Court cites a separate statutory provision, it adheres to the "Section" label.

**6.** Tracy also says Linda perjuriously told the Circuit Court she was an Illinois resident for 90 days at the time she filed her petition (see Tracy Mem.Ex.D). But whatever the reason for that mistaken statement, it had no effect on the Circuit Court, which did not base its findings on that provision of Section 401(a). Instead the Illinois Decree (Linda Mem.Ex. [A], at 1, ¶ 1) clearly states:

The Petitioner was domiciled in the State of Illinois and County of Cook for ninety (90) days next preceding the making of the findings.

Though the Circuit Court used the term "domicile" rather than the statutory term "residence," the former term comprehends the latter (*Weiss*, 87 Ill.App.3d at 647, 42 Ill.Dec. 718, 409 N.E.2d at 333).

**7.** Tracy's submission is understandably silent on that subject.

**8.** Because PKPA speaks in terms of the entry of a valid decree, rather than the time that a litigant brings suit, Tracy's references to (1) the interim dismissal of the Illinois proceeding for want of prosecution, (2) his institution of the Minnesota proceeding during the window period between the Illinois dismissal and its reinstatement and (3) the claimed existence of jurisdiction in the Family Division are all beside the mark.

within six months before that. On that latter score, it would distort normal language usage to say she was a "child" with a "home" in Minnesota as an unborn child. Moreover that strained notion is doubly untenable, given Section 1738A(b)(1)'s definition of "child":

"Child" means a person under the age of eighteen[ ]

and Section 1738A(b)(4)'s definition of "home State" (emphasis added):

"home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived *from birth* with any of such persons....

2. By definition Subsection (B) cannot refer to Minnesota either, because (as already explained) Illinois would have jurisdiction under Section 1738A(c)(2)(A).

3. Nor can Subsection (C) apply to Minnesota, because Glory has never been physically present there.

4. Subsection (D) does not fit Minnesota either, because (a) Illinois would have jurisdiction under Subsection (A) and (b) Illinois obviously has not declined to exercise that jurisdiction, as the Illinois Decree proves.

5. Finally, Subsection (E) does not fill the bill, because the Minnesota Decree is not *initially* "consistent with the provisions" of Section 1738A(c) (see Section 1738A(d), to which Subsection (E) refers) and thus cannot form the basis for *continuing* jurisdiction.

In summary, the Illinois Decree conforms to PKPA's requirements. Tracy must lose unless that result impinges on the Tenth Amendment. This opinion turns briefly to that topic.

*Tenth Amendment Analysis*

 It is surely bizarre to urge a provision grounded in the Full Faith and Credit Clause (such as Section 1738A) runs afoul of another constitutional provision dealing with reserved state powers. That is, to be sure, conceptually possible because the Tenth Amendment postdated the Constitution's original text. But the very essence of full-faith-and-credit concepts is drawn from the principles of federalism—from the fact that in our nation the States are not independent sovereigns whose conflicts can be resolved only by war or the legally unenforceable precepts of international law. Cf. *Flood,* 727 F.2d at 312 ("We cannot believe that Congress intended to render § 1738A virtually nugatory by so restricting the availability of a federal forum that state compliance with the legislation would become optional").

Small wonder, then, that once again Tracy adduces no authority for his creative suggestion. This Court rejects it and finds PKPA immune to constitutional attack on Tenth Amendment grounds.

*Conclusion*

There is no dispute as to any material fact, and Linda is entitled to a judgment as a matter of law. This Court declares:

1. the child custody determination in the Illinois Decree was made consistently with PKPA and is therefore entitled to enforcement in every State (including of course Minnesota); and

2. the child custody determination in the Minnesota Decree is invalid and void because it violates the mandate of Section 1738A(a).

Tracy is enjoined from taking any action to enforce the child custody determination provision of the Minnesota Decree and, to avoid any further dispute in that respect, is ordered to petition the Family Division to vacate and set aside that portion of the Minnesota Decree.